### A03A1586. ALI v. AARABI.
#### (589 SE2d 827)

MIKELL, Judge.

Yusuf Ali appeals the trial court's ruling that he is not entitled to a refund of the earnest money he paid pursuant to a contract he executed with Michael Aarabi to purchase a shopping center. We reverse.

It is undisputed that on September 19, 2001, the parties entered into a standard commercial sales agreement (the "Agreement") for the purchase of the property located at 4019 Glenwood Road in Decatur (the "Property"). Paragraph 3 of the Agreement, entitled "Earnest Money," provides, in pertinent part:

> Purchaser has deposited with Broker $5,000.00 . . . as "Earnest Money" which Earnest Money shall be applied as partial payment of the cash portion of the purchase price of the Property at the time the sale is consummated. . . . The parties to this Agreement understand and agree that the disbursement of the Earnest Money held by the Broker . . . can occur only (A) at closing; (B) upon written agreement signed by all parties having an interest in the funds; (C) upon court order; (D) *upon the failure of any contingency or failure of either party to fulfill its obligations as set forth in this Agreement*; or (E) as otherwise set out herein.

(Emphasis supplied.) That section further provides that in the event of a dispute, the broker would be authorized to disburse the earnest money based upon a reasonable interpretation of the Agreement or, in the alternative, to interplead the disputed sum into the court. Paragraph 14 explains the default remedies available to the parties. Under this provision, if the sale and purchase of the property was not consummated due to the purchaser's default, then the seller would retain the earnest money. Similarly, if the purchase was not consummated because of the seller's default, the earnest money would be returned to the purchaser. In Paragraph 18, "Environmental Conditions," the seller warrants that to the best of his knowledge, the Property had never been used for the handling, storage, or disposal of chemicals or hazardous wastes or substances so as to create an envi-

ronmental hazard. According to this provision, "the term 'hazardous wastes or substances' shall mean petroleum including crude oil or any fraction thereof, and any substance identified in . . . any . . . federal, state or other governmental legislation or ordinance identified by its terms as pertaining to the disposal of hazardous substances or waste." Under Paragraph 23, the parties agreed that the purchaser's obligation to purchase the property was subject to satisfaction of certain terms and conditions, including an inspection and the purchaser successfully obtaining new financing.

The original closing date was October 15, 2001. Ali applied for a loan with Homebound Mortgage Company; however, approximately one week prior to the closing, Ali was informed that his application had been denied. Aarabi agreed to reschedule the closing for October 31, 2001. Ali applied for financing with Omni National Bank ("Omni"), but the application had not been processed by the closing date.

On November 1, 2001, the parties signed an addendum to the original contract (the "Addendum"), which set a new closing date of December 14, 2001. The Addendum provided that Ali had deposited an additional $60,000 in earnest money with Aarabi. The Addendum further stated:

> Said Earnest Money is "non-refundable" to [Purchaser], except, if upon [Purchaser's] "Final" walk through, Property has been unrepairably [sic] damaged or altered from [Purchaser's] walk through on November 1, 2001. . . . All provisions of Paragraph 3 [of the Agreement] that define Broker's obligations concerning the "Earnest Money" are hereby amended to include both the Broker and Seller.

Finally, the Addendum provided that "[a]ll other terms and provisions of [the Agreement] shall remain in full force and effect."

On November 26, 2001, Omni provided Ali with a commitment to provide financing, contingent upon receipt of a satisfactory environmental report on the Property. Ahlberg Engineering, Inc., conducted the first phase of its environmental investigation on December 4. It discovered that one of the tenants of the Property used and stored paints, thinners, and solvents considered to be hazardous materials. Additionally, the investigation revealed that the Property was located in the vicinity of a number of past and present gas stations. Ahlberg's initial report identified multiple environmental concerns, including the possibility that groundwater contamination from an adjacent site may have impacted the soil and groundwater below the Property. The report recommended additional testing. Ali notified the broker of the environmental concerns and was given authorization

for additional testing of the Property. Because Ahlberg was unable to complete Phase Two of the testing before December 14, the parties agreed to reschedule the closing on December 18, 2001. On that date, Omni notified Ali that his loan application had been denied due to additional environmental test results reported by Ahlberg, which confirmed a notable release of radiated substance in the groundwater below the Property. Ali demanded a refund of the earnest money; however, Aarabi refused.

Ali filed the underlying action against Aarabi seeking to recover the earnest money, as well as an award of attorney fees and expenses. Both parties filed motions for summary judgment. After hearing oral argument, the trial court denied Ali's motion and granted Aarabi's, based on its conclusion that under the Addendum, the only event authorizing the return of the earnest money was the destruction of the premises.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We apply a de novo standard of review to an appeal from a grant of summary judgment. *Bryant v. PMC Capital*, 244 Ga. App. 313 (535 SE2d 319) (2000). Further, it is well settled that the construction of a contract is a question of law for the court and is subject to a de novo review. OCGA § 13-2-1; *Deep Six v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000); *Ga. Assn. of Educators v. Paragon Productions*, 238 Ga. App. 681, 682 (1) (520 SE2d 37) (1999). Applying this standard, we find that the trial court erred in concluding that Ali was not entitled to a refund of the earnest money.

Trial courts must follow a three-step process for resolving issues of contract construction:

> The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction (OCGA § 13-2-2); if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity.

(Punctuation and footnote omitted.) *Grier v. Brogdon*, 234 Ga. App. 79, 80 (2) (505 SE2d 512) (1998). See also *Deep Six*, supra. Applying the first step of the required analysis, we conclude that the contract language concerning the earnest money is ambiguous and that the trial court erred in concluding otherwise. Paragraph 3 of the Agreement provides that the earnest money be disbursed "upon the failure of any contingency or failure of either party to fulfill its obligations as set forth in this Agreement." Paragraph 23 of the Agreement lists Ali

obtaining new financing as a contingency. The Addendum amends Paragraph 3 of the Agreement to state that "Purchaser has additionally deposited along with the [$5,000] with Broker, [$60,000] with Seller. . . ." Seemingly in conflict with the language in Paragraph 3 of the Agreement, the Addendum further provides that the $60,000 earnest money is "non-refundable" unless the Property was damaged after the November 1, 2001, walk-through. However, the Addendum goes on to state that all provisions of Paragraph 3 of the Agreement that define the broker's obligations concerning the earnest money would now apply to Aarabi as well. It is undisputed that Ali failed to obtain new financing from two separate lenders; therefore, under the provisions of Paragraph 3, the broker would be obligated to refund the $5,000, and Aarabi would be obligated to refund the $60,000 based on the failure of the contingency.

"The cardinal rule of contract construction is to ascertain the intention of the parties. Additionally, the law favors the construction of a contract that will uphold the entire instrument as a whole." (Citations omitted.) *Balata Dev. Corp. v. Reed*, 249 Ga. App. 528, 529 (548 SE2d 668) (2001). Under OCGA § 13-2-2 (4), "the whole contract should be looked to in arriving at the construction of any part."

Applying the above rules of construction, we conclude that in executing the Addendum, Ali did not waive, amend, or modify the financing or inspection contingencies set forth in Paragraph 23 of the Agreement. Thus, the earnest money was "non-refundable" if the contingencies were met as conditions precedent to the Agreement. However, because Ali was unable to obtain financing due to environmental concerns, that contingency was not satisfied, and Ali was entitled to a refund of the earnest money. Accordingly, the trial court's grant of summary judgment to Aarabi and its denial of summary judgment to Ali must be reversed as to the earnest money.[1]

*Judgment reversed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 22, 2003 —
RECONSIDERATION DENIED NOVEMBER 12, 2003 — 

*McGee & Oxford, Donald L. Cook*, for appellant.
*Charles Crawford*, for appellee.

---

[1] Neither of the motions for summary judgment addresses the plaintiff's request for an award of attorney fees and expenses, nor does the trial court's order. Further, neither party has raised this issue in their briefs. Based on the record and briefs before us, we cannot conclude that such an award is required as a matter of law.