## A05A1483. KROGH et al. v. PARGAR, LLC.
(625 SE2d 435)

BERNES, Judge.

Appellants J.R. and Patricia Krogh ("the Kroghs") filed the underlying lawsuit seeking a refund of a $28,210 real estate commission paid to appellee Pargar, LLC d/b/a Prudential Georgia Realty ("Prudential") prior to a closing. Both parties filed cross-motions for summary judgment. The Kroghs appeal the trial court's denial of their motion and its grant of Prudential's motion. The Kroghs contend that the terms of the Lease/Purchase Agreement ("the contract") entitled them to a refund of the pre-paid commission after the financing contingency was not satisfied and the sale failed to close. Prudential contends that the commission was nonrefundable and unconditional pursuant to the unambiguous terms of the contract.

We affirm the trial court's denial of summary judgment to the Kroghs based on its determination that the failure of the financing contingency did not void the entire contract or Prudential's entitlement to a commission. However, we reverse the trial court's grant of summary judgment to Prudential because we find the contract ambiguous as to whether the commission was refundable once the sale failed to close, and a question of material fact exists as to the parties' intent on this issue.

On appeal of a grant of summary judgment, we review the evidence de novo and determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the party was entitled to judgment as a matter of law. *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998). "Summary judgment is appropriate when the court, viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991)." (Citation and punctuation omitted.) Id. at 251.

So viewed, the evidence establishes that on or about January 18, 2002, the Kroghs entered into an Exclusive Listing Agreement retaining Michelle Worthy of Prudential to serve as their real estate agent for the sale of their residence in Hoschton. The listing agreement provided for a broker's sales commission of seven percent of the sales price.

Ramon and Karen Chalas ("Buyers") offered to purchase the Kroghs' residence under a lease/purchase arrangement.[1] The Buyers proposed a sales price of $403,000 with a closing date by June 1, 2004

---

[1] The Buyers were not represented by an agent.

and a lease term commencing on June 1, 2002 with payment of monthly rent in the amount of $2,601.33, a portion of which would be applied to the sales price. The Buyers further agreed to a nonrefundable deposit in the total amount of $12,000[2] to be fully paid on or before June 1, 2002. On or about March 29, 2002, after discussing the risks and terms of the transaction, the Kroghs agreed to the lease/purchase arrangement and signed the contract drafted by Ms. Worthy.

Paragraph 2C of the executed contract provided that "[t]his Agreement is made conditioned upon Buyer's ability to obtain a loan." Specifically as to the broker's commission, Paragraph 11 provided that

> The Broker(s) identified herein have performed valuable brokerage services and are to be paid a commission pursuant to a separate agreement or agreements. . . . The closing attorney is directed to pay the commission of the Broker(s) at closing out of the proceeds of the sale. . . . In the event the sale is not closed because of Buyer's and/or Seller's failure or refusal to perform any of their obligations herein, the non-performing party shall immediately pay the Broker(s) the full commission the Broker(s) would have received had the sale closed, and the Selling Broker and Listing Broker may jointly or independently pursue the non-performing party for their portion of the commission.

The contract further contained several special stipulations and specified that "[t]he following Special Stipulations, if conflicting with any preceding paragraph, shall control." Special Stipulation No. 1, provided: "Real Estate Commission of [$]28,210.00 to be paid to Prudential Georgia Realty on or before June 1, 2002 by sellers." Although no closing had occurred, on May 31, 2002, the Kroghs tendered payment of the commission to Prudential in the amount of $28,210.

On June 1, 2002, the Buyers paid the deposit to the Kroghs pursuant to Special Stipulation No. 2 of the contract, and took possession of the residence under the lease. Special Stipulation No. 3 required the Buyers to obtain the new loan and to close the sale by June 1, 2004, two years later. In September 2002, the Buyers informed Ms. Worthy that they could not afford the house and could not obtain financing for the sale.

The Kroghs and Ms. Worthy met with the Buyers, and encouraged them not to back out of the deal. Ms. Worthy tried to help the

---

[2] In their depositions, the Kroghs testified that $10,000 of the deposit paid by the Buyers was for certain items of personal property purchased with the house.

Buyers obtain financing, but was unsuccessful. The Buyers leased the residence for several more months, but finally vacated the property on or about May 5, 2003 after having paid nine months of rent. At about that same time, the Buyers filed Chapter 7 bankruptcy. The Kroghs retained the $12,000 paid by the Buyers, and demanded a refund of the broker's commission. Prudential refused.

1. Relying on OCGA § 13-3-4, the Kroghs contend the financing contingency was a condition precedent that had to be "performed before the contract became absolute and obligatory," and that its failure voided the entire contract, including their liability for a commission. We disagree.

Special Stipulation No. 1 required the Kroghs to pay the commission by June 1, 2002. Special Stipulation No. 3 did not require the Buyer to satisfy the financing contingency and close on the property until June 1, 2004, two years later. Since the deadline to pay the commission was before the deadline to satisfy the financing contingency, it is clear that the financing contingency was not a condition precedent to the obligation to pay the commission.

Moreover, a financing contingency is not a condition precedent to the existence of a valid contract. *Patel v. Burt Dev. Co.*, 261 Ga. App. 436, 439 (2) (582 SE2d 495) (2003). See also *Giallanza Realty v. Rosebud Properties*, 209 Ga. App. 571, 572 (2) (434 SE2d 130) (1993) (ruling that waiver of a financing contingency "would not provide a basis for the vendor to renege on the real estate sales contract to the detriment of the broker") (citation and punctuation omitted). Accordingly, the failure of the financing contingency did not void the entire contract or Prudential's right to claim a commission under the terms therein.[3]

2. Next, the Kroghs contend that the trial court erred in determining that Special Stipulation No. 1 relating to the payment of the commission unambiguously provided for Prudential's commission without condition and without refund. "The construction of a contract is a question of law for the court. Where any matter of fact is involved, the jury should find the fact." OCGA § 13-2-1.

> Trial courts must follow a three-step process for resolving issues of contract construction: The trial court must first decide whether the contract language is ambiguous; if it is

---

[3] Likewise, the Kroghs' retention of the Buyers' deposit demonstrates that the failure of the financing contingency was not intended to void the entire contract. If we were to accept the Kroghs' argument that the entire contract is wholly and utterly void, then Special Stipulation No. 2 governing the Buyers' deposit would be as void as Special Stipulation No. 1 governing the Prudential commission. As such, the Kroghs would have been required to refund at least a portion of the Buyers' funds unrelated to the sale of the personal property.

ambiguous, the trial court must then apply the applicable rules of construction (OCGA § 13-2-2); if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity.

(Citations omitted.) *Ali v. Aarabi,* 264 Ga. App. 64, 66 (589 SE2d 827) (2003). On appeal, we review the trial court's construction of a contract de novo. Id.

The Kroghs point to the provisions in Paragraph 11 and argue that when the sale failed to close, the Buyers became responsible for the commission. Paragraph 11 contemplates payment of the commission at closing and thus, conflicts with Special Stipulation No. 1 which provides for payment of the commission on or before June 1, 2002. The contract expressly provides that special stipulations prevail over conflicting terms in preceding paragraphs. As such, Special Stipulation No. 1 controls.[4] This provision specifies that "Real Estate Commission of $28,210 [is] to be paid to Prudential Georgia Realty on or before June 1, 2002 *by sellers.*" (Emphasis supplied.) The trial court determined that Special Stipulation No. 1 unconditionally required the Kroghs to pay the commission in advance of closing. Implicit in the trial court's ruling is that the terms fail to provide for a refund of the commission from Prudential under any circumstances.

"The cardinal rule of construction is to ascertain the intention of the parties." OCGA § 13-2-3. "If the intention of the parties *as of the time of executing the agreement* is clear, it should be enforced, even though the parties disagree as to its meaning as of the time of the litigation." (Citation and punctuation omitted; emphasis in original.) *Paces Partnership v. Grant,* 212 Ga. App. 621, 624 (2) (442 SE2d 826) (1994). "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." OCGA § 13-2-2 (4). "[T]he court should ascertain the parties' intent after considering the whole agreement and interpret each of the provisions so as to harmonize with the others." (Citations and punctuation omitted.) *Paces Partnership,* 212 Ga. App. at 624 (2). "[I]n cases of doubt, the

---

[4] We also note that even in the absence of Special Stipulation No. 1, the Buyers would not be responsible for the commission because their failure to obtain financing did not constitute nonperformance. Based on the contract's financing contingency, the Buyers' performance duty was limited to making efforts to obtain financing "diligently and in good faith." See Paragraph 2.C.(4) of the contract; *Nalley v. Harris,* 176 Ga. App. 553, 555 (2) (336 SE2d 822) (1985). The Kroghs concede that "despite substantial assistance by [Ms.] Worthy, the [Buyers] were simply unable to obtain . . . a purchase money loan" and that "the inability of the [Buyers] to obtain financing did not constitute a 'failure or refusal to perform.' "

contract will be construed most strongly against the one who prepared the instrument." (Citations omitted.) *Brooke v. Phillips Petroleum Co.*, 113 Ga. App. 742, 744 (2) (149 SE2d 511) (1966). Since the contract was drafted by Ms. Worthy, Prudential's agent, it is to be construed most strongly against Prudential. OCGA § 13-2-2 (5); *Hunsinger v. Lockheed Corp.*, 192 Ga. App. 781, 784 (1) (386 SE2d 537) (1989).

Special Stipulation No. 1 is completely silent on the issue of whether the commission paid by the Kroghs was refundable or nonrefundable in the event that the sale failed to close. In contrast, Special Stipulation Nos. 2 and 3 expressly provide that the Buyers' deposit is nonrefundable and that if the Buyers failed to obtain financing and close on the sale by June 1, 2004, the Buyers forfeit all monies applied toward the purchase price. "Expressio unius est exclusio alterius." "The express mention of one thing implies the exclusion of another." See *George L. Smith II Ga. World Congress Center Auth. v. Soft Comdex, Inc.*, 250 Ga. App. 461, 464 (1) (b) (550 SE2d 704) (2001); *Sovereign Camp Woodmen of the World v. Heflin*, 188 Ga. 234, 235-236 (3) (3 SE2d 559) (1939). Application of this maxim to this case allows for an interpretation that the contract's failure to expressly state that the commission was nonrefundable implies that the commission was in fact refundable, particularly in view of Special Stipulation Nos. 2 and 3, which expressly barred a refund to the Buyers in the event the sale did not close.

Nevertheless, application of the "expressio unius" maxim is not dispositive in this case because the contract fails to specify the basis for the commission, i.e., whether the commission was earned on the lease, the sale, or both. If the commission was *prepaid* by the Kroghs in anticipation of the sale which failed to occur, then Special Stipulation No. 1 could be construed as entitling the Kroghs to a refund. Alternatively, if the commission was paid for services relating to the leasing of the residence then Special Stipulation No. 1 could be construed as unconditionally entitling Prudential to the commission from the Kroghs. See *Thomas v. Memory*, 154 Ga. App. 756 (270 SE2d 24) (1980) (a broker's commission can be earned for a lease rather than a sale). As such, even after resorting to the canons of construction, there remains more than one reasonable interpretation as to whether Prudential was unconditionally entitled to the commission paid by the Kroghs.

While "[p]arol evidence is inadmissible to add to, take from, or vary a written contract," we may consider the parol evidence presented by the parties in light of the unresolved ambiguity. OCGA § 13-2-2 (1). Prudential contends the parties intended to connect the

broker's right to the commission with the lease and that the obligation for payment belonged to the Kroghs alone. Jan Baker of Prudential testified during her deposition that there is no industry standard on how to handle commissions on a lease/purchase transaction. She recommended that Ms. Worthy request payment of commission upon the lease move-in date because monthly commission payments were difficult to handle administratively. In her deposition, Ms. Worthy testified that she and the Kroghs did not discuss what would happen if the Buyers decided not to close, and that the contract was written under the assumption that everyone would comply with their obligations. Ms. Worthy further stated that she informed the Kroghs that the only way she would work on the lease/purchase transaction was for the commission to be prepaid on the June 1, 2002 lease move-in date since the transaction would require more time and work than a normal contract.

In contrast, the Kroghs claimed that the commission was prepaid in anticipation of the closing and that they were not obligated to pay Prudential a commission in the full amount of $28,210 based on seven percent of the $403,000 sales price since the sale did not close. The Kroghs further expressed a belief that the prepaid commission would be refunded if the Buyers failed to go through with the sale.

In sum, the issue of whether the parties intended for the commission to be refunded when the sale failed to close is not resolved by application of the rules of contract construction nor by the parol evidence. A genuine issue of fact exists for jury determination, and therefore, the trial court erred in granting summary judgment to Prudential. Accordingly, we reverse on this issue.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 29, 2005 —
RECONSIDERATION DENIED DECEMBER 15, 2005 —

*Denise R. Griffin*, for appellants.
*McCalla, Raymer, Padrick, Cobb, Nichols & Clark, Peter L. Lublin, Susan A. Thomas, Monica K. Gilroy*, for appellee.