A07A0332. COVINGTON SQUARE ASSOCIATES, LLC
v. INGLES MARKETS, INC.
(641 SE2d 266)

BLACKBURN, Presiding Judge.

In this breach of contract claim, Covington Square Associates, LLC ("Covington") appeals the grant of summary judgment to Ingles Markets, Inc. ("Ingles"), contending that (1) the trial court erred in ruling that a lease agreement between Covington and Ingles did not require Ingles to pay a certain portion of security guard costs associated with a shopping center; (2) issues of material fact exist as to whether the parties' conduct effected a mutual departure from the terms of the lease agreement; and (3) the trial court erred in ruling on Ingles's motion without first ruling on Covington's motion to compel discovery. For the reasons that follow, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1]

The undisputed record shows that from 1995 to 2004, Covington leased certain property to Ingles in a shopping center, where Ingles operated a grocery store. During that period, Covington hired a

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

security guard for the shopping center and billed Ingles periodically for a portion of the costs, based on an amount proportional to the square footage leased by Ingles, which was the largest tenant. Ingles paid part of the billed amounts, based on an equal division among tenants, and disputed the remaining amounts billed by Covington. When Covington sold the shopping center in 2004, it sought to collect the unpaid portions of the security guard costs it billed to Ingles. When Ingles refused to pay, Covington sued Ingles for breach of contract seeking damages for unpaid rents under the lease. Ingles moved for summary judgment, contending that the lease did not require it to pay security guard costs calculated as a proportional amount, and the trial court granted the motion, giving rise to this appeal.

1. Covington contends that the lease agreement between Ingles and Covington allowed it to charge Ingles for security on a pro rata, proportional basis. We disagree.

> [T]he construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, [no construction is required, and] the court simply enforces the contract according to its clear terms. . . . Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. The existence or non-existence of an ambiguity is a question of law for the court. If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2.

(Citations omitted.) *Woody's Steaks, LLC v. Pastoria.*[2]

Here, the relevant provisions of the lease are as follows:

> 6.3 *Maintenance.* Landlord [Covington] shall maintain, in keeping with the highest standards of shopping center practice, the Common Areas in clean condition and good repair, including but not limited to: (i) maintaining all signs, landscaped areas, and parking areas and access roads . . . ; (ii)

---

[2] *Woody's Steaks, LLC v. Pastoria,* 261 Ga. App. 815, 817 (584 SE2d 41) (2003).

adequately illuminating the parking areas . . . ; and (iii) providing adequate security lighting and fire protection for the Shopping Center as required by applicable code or ordinance.

6.4 *Tenant's Contribution.* Tenant [Ingles] shall pay to the Landlord, as additional rent during the term hereof, Tenant's proportionate share of Landlord's costs of operating the Shopping Center and maintaining the Common Areas (the "Common Area Costs") during the term hereof. Tenant's proportionate share shall be calculated [according to the proportion of the total square footage leased by Tenant, based on a 32,000 square feet total]. . . . As used herein, "*Common Area Costs*" shall mean the costs and expenses incurred by Landlord in the operation and maintenance of the Shopping Center and the Common Areas, *and shall include* repairs to the parking areas or other Common Areas, lighting, removal of snow and ice, trash, rubbish and other refuse, general comprehensive liability insurance covering the Common Areas; fire, casualty and extended coverage on the Premises and the Shopping Center . . . ; and the cost of leasing or the depreciation on any equipment used to implement the foregoing maintenance, *but shall not include*: any Shopping Center administrative or management fees or the like; the cost of any item for which Landlord is reimbursed by insurance or otherwise; the cost of any additions to the Common Areas pursuant to an expansion of the Shopping Center's leasable square footage; the cost of any alterations . . . and other items . . . properly classified as capital expenditures or which are made in order to prepare space for occupancy by a new tenant; the cost of any initial installations . . . ; legal, accounting and other professional fees; interest or amortization payments . . . ; leasing commissions, advertising expenses and other costs incurred in leasing or attempting to lease any portion of the Shopping Center; the cost of any services performed specifically for certain tenants of the Shopping Center; the cost of correcting defects in the construction of the buildings . . . ; reserves for . . . repair . . . ; the cost of Landlord's membership[s] . . . ; and any political or charitable contributions.

(Emphasis supplied.)

At the outset, we note that Covington seeks recovery of a specific amount, defined in Section 6.4 as "Common Area Costs," calculated by the particular formula outlined in that section. It is undisputed

that Ingles has paid some amount each year for the security guard charges. Therefore, Ingles's debt, as calculated under the "Common Area Costs" formula, exists, if at all, only as a function of the lease agreement.

Accordingly, the relevant question is whether security guard costs are contemplated by the term "Common Area Costs," as defined in Section 6.4. In defining the term "Common Area Costs," the lease does not list security guard costs after the phrase "shall include," nor does the lease list them after the phrase "shall not include." In light of this lack of clarity, we apply the rules of contract construction to discern the meaning of the provision. See *Woody's Steaks, LLC v. Pastoria*, supra, 261 Ga. App. at 817.

"The cardinal rule of construction is to ascertain the intention of the parties. OCGA § 13-2-3." (Punctuation omitted.) *Krogh v. Pargar, LLC*.[3] "The court seeks to determine the intent of the parties within the terms of the entire agreement." *In re Estate of Sims*.[4] Of particular importance here is the phrase " 'Common Area Costs' shall mean the costs and expenses incurred by Landlord in the operation and maintenance of the Shopping Center and the Common Areas, *and shall include* repairs [and other listed items]." (Emphasis supplied.) Covington argues that the phrase "and shall include" is not limiting, and the omission of security guard costs from the list of particular items that shall be included is not dispositive. Ingles argues, and the trial court held, that the maxim "[e]xpressio unius est exclusio alterius[, t]he express mention of one thing implies the exclusion of another," (punctuation omitted) *Krogh v. Pargar, LLC*, supra, 277 Ga. App. at 39 (2), applies here. Such application would mean that security guard costs were not included in the costs to be calculated by the "Common Area Costs" formula, because they were not enumerated in the list of items that "shall include." This interpretation is arguably tenuous in light of the fact that, in the same sentence, a separate list of excluded items is given. However, looking to similar language in Section 6.3, addressing maintenance, the lease uses the following terminology: "Landlord shall maintain . . . the Common Areas in clean condition and good repair, *including but not limited to*: (i) maintaining all signs, landscaped areas, [etc.]" The use of the phrase "but not limited to" in Section 6.3, and its absence in Section 6.4, implies a different operation of the word "include" as used in Section 6.4, in that it may be read in that context to be a limiting term, similar to "shall consist of." See *Berryhill v. Ga. Community Support &c.*[5] ("where a general term is

---

[3] *Krogh v. Pargar, LLC*, 277 Ga. App. 35, 38 (2) (625 SE2d 435) (2005).

[4] *In re Estate of Sims*, 259 Ga. App. 786, 790 (1) (578 SE2d 498) (2003).

[5] *Berryhill v. Ga. Community Support &c.*, 281 Ga. 439, 441 (638 SE2d 278) (2006).

followed by the word 'including,' which is itself followed by specific terms, the intent may be one of limitation") (punctuation omitted). If the parties had intended the term "shall include" to mean otherwise, they could have qualified it as they did "including" in Section 6.3.

Therefore, reading the lease in its entirety and harmonizing its terminology, we conclude that the list of costs to be calculated under the Common Area Costs formula does not include security guard costs. The trial court correctly ruled that Ingles was not required to pay for security guard costs according to the Common Area Costs formula in the lease.

2. Covington contends that material issues of fact exist as to whether the parties modified the contract through their conduct. However, Covington did not raise this argument before the trial court, nor did the trial court address it in its order, so the issue is not properly before this Court. See *West v. Austin.*[6] Covington points to a portion of the transcript from oral argument where the trial court briefly questions whether an implied contract existed. However, Covington's complaint does not seek recovery under an implied contract theory; it merely states that Covington "seeks to recover damages for breach of contract for rent due under a commercial lease." See *Hendon Properties v. Cinema Dev.*[7] Nor did counsel for Covington raise and argue an implied contract theory before the trial court. This being the case, we will not consider such an argument here. Moreover, although mutual departure is generally a jury question, see *Bridgeboro Lime &c. Co. v. Hewitt Contracting Co.*,[8] we note that here, the trial court correctly ruled that Ingles was authorized to refuse to pay for the security guard charges calculated by Covington in accordance with the formula in the lease, and it is undisputed that it did so refuse. Therefore, there is no factual issue as to a mutual departure from the contract terms, as Ingles consistently denied that security guard costs were to be billed as a Common Area Cost.[9] See *Guideone Life Ins. Co. v. Ward*[10] (the departure "must be *mutual* between the parties and intended, and must be such as, in law, to make practically a new agreement") (punctuation omitted; emphasis supplied).

---

[6] *West v. Austin*, 274 Ga. App. 729, 730 (618 SE2d 662) (2005).

[7] *Hendon Properties v. Cinema Dev.*, 275 Ga. App. 434, 439 (2) (620 SE2d 644) (2005).

[8] *Bridgeboro Lime &c. Co. v. Hewitt Contracting Co.*, 221 Ga. 552, 555 (2) (146 SE2d 305) (1965).

[9] Ingles, apparently inadvertently, paid as billed one year, but it has filed a counterclaim for that payment, and in prior and subsequent years Ingles disputed the amount it was charged for security guard costs. We do not deem this to be a pattern sufficient to evidence a mutual departure. See *Prudential Ins. Co. v. Nessmith*, 174 Ga. App. 39, 40 (329 SE2d 249) (1985).

[10] *Guideone Life Ins. Co. v. Ward*, 275 Ga. App. 1, 3 (1) (a) (619 SE2d 723) (2005).

3. Covington also contends that the trial court erred in ruling on Ingles's motion for summary judgment while Covington's motion to compel discovery was pending. We disagree.

After the close of discovery, Covington sought and obtained a subpoena to depose Robert Ingle, an officer of Ingles. Prior to the trial court's order on its motion for summary judgment, Ingles moved to quash the subpoena and Covington moved to compel discovery. In its order granting summary judgment, the trial court ruled that the motions were moot.

"As a general rule, this Court does not condone the grant of summary judgment while a motion to compel discovery is pending, unless it can be determined that the disallowed discovery would add nothing of substance to the party's claim." (Punctuation omitted.) *Parks v. Hyundai Motor America.*[11] Here, Covington contends that Robert Ingle's deposition was necessary in that he would have testified as to why Ingles did not pay for security guard costs as billed by Covington. However, as Covington's claim is based on a breach of contract, which was susceptible to interpretation by the Court as a matter of law, Robert Ingle's testimony can add nothing of substance to Covington's claim. Accordingly, we discern no error.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

---

DECIDED JANUARY 12, 2007 —
RECONSIDERATION DENIED JANUARY 26, 2007 — 

*Michael A. Kessler*, for appellant.
*Hartman, Simons, Spielman & Wood, Samuel R. Arden, Jill R. Johnson*, for appellee.

---

[11] *Parks v. Hyundai Motor America*, 258 Ga. App. 876, 877 (1) (575 SE2d 673) (2002).