## A08A2418. STEELE et al. v. PACK et al.
### (674 SE2d 134)

ADAMS, Judge.

At issue in this appeal is whether Jerry Steele and River Chase Development Company, Inc. (collectively, "Steele") or William A. Pack and Louise M. Pack are entitled to certain funds paid by Steele to Keller Williams Realty Grand South under the terms of a real estate sale agreement between Steele and the Packs. Keller Williams filed a Complaint in Interpleader in superior court naming the Packs and Steele as defendants and asked that they be required to settle between themselves their respective rights to the funds. Steele and the Packs filed cross-motions for summary judgment. The trial court granted summary judgment to the Packs and ordered that the funds be paid to the Packs, minus attorney fees to be paid to Keller Williams. Steele appeals, and we affirm for the reasons set forth below.

> Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. On appeal from the grant or denial of summary judgment, we conduct a de novo review, construing the evidence and all reasonable inferences most favorably to the nonmoving party.

(Citation omitted.) *Miller v. Coleman*, 284 Ga. App. 300 (643 SE2d 797) (2007).

· So viewed, the evidence shows that Steele, as buyer, and the Packs, as seller, entered into a Lot/Land Purchase and Sale Agreement, effective September 13, 2005, with respect to certain DeKalb County real estate (the "Property"). The closing date was originally scheduled for December 30, 2005. However, the sale agreement was "extended" to March 31, 2006, then June 30, 2006, then August 31, 2006, by a series of amendments. The sale of the Property never occurred.

In the first amendment, dated December 13, 2005, Steele agreed to pay the Packs, commencing in April 2006, "$3500 a month carrying charges if the property is not closed by March 31[,] 2006." The second amendment, dated March 1, 2006, provided that the monthly payments, payable as provided in the first amendment, were to be deposited with Keller Williams. The second amendment further specified that the monthly payments, referred to as "interest payments," were to be credited to Steele at closing. However, "[a]ll interest payments will be refunded to [Steele] if rezoning is denied conditioned upon [Steele] turning over to the [Packs] the plats, subdivision design, engineering plats of survey and the paperwork for rezoning submittal." The third amendment did not address the monthly payments, while the fourth amendment, dated July 28, 2006, provided that "[a]ll parties agree to drop the $3,500 earnest money payment for the month of July."

The parties dispute whether the trial court correctly interpreted the sale agreement. "[I]t is well settled that the construction of a contract is a question of law for the court and is subject to a de novo review." *Ali v. Aarabi*, 264 Ga. App. 64, 66 (589 SE2d 827) (2003). "The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." OCGA § 13-2-3. "If the language is plain and unambiguous and the intent may be clearly gathered therefrom, we need look no further." (Punctuation omitted.) *Hall v. Ross*, 273 Ga. App. 811, 813 (616 SE2d 145) (2005). If an ambiguity exists, a jury question may arise, but only if the court is unable to resolve the ambiguity by applying the rules of construction set forth in OCGA § 13-2-2. See *Woody's Steaks, LLC v. Pastoria*, 261 Ga. App. 815, 817 (1) (584 SE2d 41) (2003).

1. Steele claims that the trial court erred in granting summary judgment to the Packs because the Packs failed to show that they were entitled to the disputed funds under the express terms of the sale agreement. We disagree.

The sale agreement contained a separate provision with regard to "earnest money," but this provision does not control disburse-

ment of the disputed funds, notwithstanding the reference in the fourth amendment to "earnest money payment." The original sale agreement provided that "[Steele] has paid to [Keller Williams] earnest money of $5,000 . . . which has been received by [Keller Williams]." According to Keller Williams's Complaint in Interpleader, however, the funds at issue were $10,500 in "interest payments," and this assertion was admitted by both Steele and the Packs in their answers. Although referred to in the amendments by different names as "carrying charges," "interest payments," and "earnest money," the references are necessarily to the $3,500 monthly payment obligation initially set forth in the first amendment to the sale agreement.[1] The terms for disbursement of these funds to Steele are expressly set forth in the second amendment and differ from the terms of the sale agreement addressing the disbursement of the $5,000 in earnest money. Accordingly, we look to the provisions of the amendments to the sale agreement to determine which party is entitled to the disputed funds. See *Thomas v. Garrett*, 265 Ga. 395, 396 (1) (456 SE2d 573) (1995) ("the modification of a contract may be accomplished by a subsequent mutual agreement of all the parties thereto").

Under the first amendment, the monthly payments were to be made by Steele to the Packs. However, as per the second amendment, the monthly payments were to be deposited with Keller Williams and then credited to Steele at closing or refunded to Steele under certain conditions. Since the sale never closed, the money cannot be credited to Steele. As for a refund, Steele is entitled to the money only if (i) "rezoning is denied," and (ii) Steele turns over to the Packs "the plats, subdivision design, engineering plats of survey and the paperwork for rezoning submittal." Pretermitting whether admissible evidence showed that the rezoning plats and other required documents were turned over to the Packs, the condition that "rezoning is denied" fails inasmuch as the record shows that the Property was rezoned on August 22, 2006 to "R-75," as requested on the rezoning application submitted by Steele.[2] It follows that the trial court correctly ordered that the disputed funds be disbursed to the Packs.

2. Steele also argues that the expiration of the sale agreement nevertheless required the payment to Steele of the disputed funds.

---

[1] Included in the record is a check from Keller Williams to the Packs, designated "Refund of Earnest Money," which the Packs contend to be the earnest money referred to in the original sale agreement, less an amount allocated to pay Steele's share of certain survey costs. Steele does not contend that any part of the disputed funds include the originally deposited earnest money.

[2] We disagree with Steele's assertion in his reply brief that the Packs either abandoned the argument made to the trial court below that there had been no denial of rezoning or had conceded the issue.

As Steele points out, the sale agreement terminated on August 31, 2006. The sale agreement also provided that Steele was entitled to the return of its earnest money under Section 4 of the sale agreement upon "the termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement." Even if Section 4 applied as to the $5,000 in original earnest money, however, the provisions of the amendments governed the refund of the disputed funds and so we find Steele's argument has no merit.

3. Lastly, Steele contends that he was entitled to the disputed funds because the Property was not rezoned to satisfy the zoning contingency contained in the sale agreement, and that rezoning was therefore "denied." Pursuant to a special stipulation attached to the initial contract, the sale agreement was contingent upon the Property "being rezoned to 2+/UNITS/ACR[E] on or before the 15 day of December, 2005." Steele argues that the contingency failed when DeKalb County's Board of Commissioners imposed a zoning condition that prohibited building roads across the wetlands located on the Property. According to the affidavit of engineer Douglas Wayne Smith, with the wetland restrictions "it is impossible to yield 2+ units per acre on the property." However, even if the rezoning contingency was not satisfied, nothing in the record shows that rezoning was "denied," the word chosen by the parties in defining the event which would require refund of the monthly payments to Steele. See *Quality Foods v. Smithberg*, 288 Ga. App. 47, 53 (3) (a) (653 SE2d 486) (2007) ("in construing contracts words generally bear their usual and common signification"). Rather, under the provisions of the sale agreement, Steele was responsible for pursuing the rezoning, and Steele chose to request rezoning to R-75, and the Property was rezoned to R-75.

Furthermore, the rezoning contingency provided that

> if [Steele] notifies [the Packs] or [Keller Williams] in writing within forty-eight hours after the above date that Property cannot be so rezoned, then in such event this Agreement shall automatically terminate and [Keller Williams] shall promptly refund the Earnest Money to [Steele]. If [Steele] fails to provide such notice, then this contingency shall be deemed to have been waived by [Steele].

Even if we assume, without deciding, that the rezoning contingency was necessarily extended beyond the December 15, 2005 date initially set forth therein by the extensions to the term of the sale agreement, and that there was no waiver of the contingency, the failure of the rezoning contingency contemplates refund of the "[e]arnest [m]oney" to Steele but not the refund of the monthly

payments at issue here. Accordingly, we find no merit in Steele's claim of error.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 23, 2009.

*Scott D. Bennett*, for appellants.
*Meadows & Macie, Mary M. House*, for appellees.