A09A2145. COVINGTON SQUARE ASSOCIATES, LLC
v. INGLES MARKETS, INC.
(686 SE2d 359)

MIKELL, Judge.

Ingles Markets, Inc. ("Ingles") sued Covington Square Associates, LLC ("Covington"), for conversion, unjust enrichment, attorney fees, and punitive damages arising out of its refusal to return a check Ingles alleged it paid by mistake. The trial court granted partial summary judgment to Ingles on its claims for conversion, attorney fees, and punitive damages, ruling that Covington wrongfully asserted dominion or control over Ingles's property; that Ingles is entitled to attorney fees and punitive damages; and that the amounts of those damages are to be determined at trial. Covington appeals these rulings. For the following reasons, we affirm the trial court's ruling as to the claims for conversion and attorney fees, but reverse as to the claim for punitive damages.

Our review of the grant of summary judgment is de novo.[1]

> To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. Where the movant is the plaintiff, she has the burden of presenting evidence to support her claim and the burden of piercing the defendant's affirmative defenses.[2]

So viewed, the record reflects that in 1987, Ingles and a prior owner of Covington Square Shopping Center in DeKalb County (the "Shopping Center") entered into an agreement for Ingles to lease certain space in the Shopping Center (the "Lease"). Under the terms of the Lease, Ingles paid a portion of the real estate taxes for the Shopping Center. In 1994, Covington purchased the Shopping Center and became Ingles's landlord. According to Ron Freeman, Ingles's chief financial officer, Ingles fully paid all real estate tax charges to

---

[1] *Smith v. Gordon*, 266 Ga. App. 814 (1) (598 SE2d 92) (2004).

[2] (Footnotes omitted.) Id.

Covington during the time it owned the Shopping Center. Ingles also paid a portion of the cost to hire a security guard for the Shopping Center.[3] In 2004, Northeast Enterprises, Inc. ("Northeast Enterprises") purchased the Shopping Center from Covington.

On November 15, 2005, Ingles received a real estate tax statement from Northeast Enterprises for the amount of $32,584.85, to cover 2005 county property taxes. On December 20, 2005, Ingles mistakenly sent a check in the amount of $32,584.85 to Covington, its former landlord, rather than Northeast Enterprises. According to Freeman, the check represented Ingles's payment of its 2005 property taxes for the Shopping Center.[4] Covington cashed the check, and Ingles had to issue another check in the amount of $32,584.85 to Northeast Enterprises to satisfy its property tax obligation. On February 3, 2006, Ingles notified Covington of its mistake and demanded return of the funds. On February 13, 2006, Covington notified Ingles that it would retain the funds as partial payment of the unpaid security costs at issue in the DeKalb litigation.

Ingles filed the instant action on February 24, 2006. The trial court stayed the case pending the outcome of the appeal in the DeKalb litigation, and on December 14, 2007, following our ruling in the DeKalb litigation, Ingles again demanded return of the funds. There is no evidence in the record that Covington has returned the funds.

1. Covington contends that the trial court erred in granting summary judgment to Ingles because "[t]he mistaken payment by Ingles amounts to nothing more than an overpayment under the Lease. Therefore, Ingles' claim to recover the payment sounds in contract and not in tort or conversion." Covington does not dispute that Ingles is entitled to a refund due to the DeKalb litigation, but disputes that there was a conversion. Covington relies on *Kline v. Atlanta Gas Light Co.*[5] and *Levenson v. Word*,[6] to support its argument.

---

[3] See *Covington Square Assoc. v. Ingles Markets*, 283 Ga. App. 307 (641 SE2d 266) (2007) ("*Covington Square I*" or the "DeKalb litigation"). This is the second appearance of these parties before this Court. As explained in *Covington Square I*, shortly after selling the Shopping Center in 2004, Covington sought to collect unpaid portions of security guard costs it billed to Ingles. When Ingles refused to pay, Covington sued Ingles for breach of contract seeking damages for unpaid rents under the Lease. Id. at 308. We affirmed the trial court's grant of summary judgment to Ingles, ruling that the Lease did not require Ingles to pay security guard costs. Id. at 311 (1).

[4] Although we cannot tell from the poor copy included in the record on appeal, Freeman avers that the check indicates on its face that it was for payment of Ingles's 2005 property taxes. In its order, the trial court also notes that the check indicates on its face that it was for payment of Ingles's 2005 property taxes.

[5] 246 Ga. App. 172 (538 SE2d 93) (2000).

[6] 294 Ga. App. 104 (668 SE2d 763) (2008).

With regard to *Kline*, the trial court correctly distinguished that case because the excess payment was used to pay an undisputed outstanding debt;[7] here, the alleged outstanding debt was in dispute, and Covington specifically sued Ingles in the DeKalb litigation to recover the disputed amount. *Levenson* is likewise distinguishable and does not require reversal. In that case, there was no dispute that the criminal defendant owed the retainer fee to the defendants, and the plaintiff could not prove that the defendants' exercise of dominion over the funds was wrongful.[8] Since any outstanding debt in this case was in dispute at the time Ingles mistakenly mailed the check to Covington, *Kline* and *Levenson* are inapplicable.

> Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation. Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion. It is unnecessary to show that the defendant applied it to his own use, if he exercised dominion over it in defiance of the owner's right, or in a manner inconsistent with it.[9]

One way to prove that a defendant has exercised unauthorized dominion over the property and has thereby converted the property is to present evidence that "a defendant, who has lawfully come into possession of the plaintiff's property, unlawfully refuses to return the plaintiff's property after the plaintiff demands its return."[10] In this case, Ingles mistakenly mailed to Covington a check intended for its current landlord to cover its property tax bill. When Ingles realized the error, it immediately notified Covington of the clerical error, expressly noted that it had intended to submit the payment to its current landlord, and demanded return of the check. The elements of conversion have been satisfied.

We find Covington's arguments on this issue disingenuous. Covington filed the DeKalb litigation specifically because the "Common Area" costs for security charges were in dispute and because

---

[7] *Kline*, supra at 173-174.

[8] *Levenson*, supra at 106-107 (1).

[9] (Citations and punctuation omitted.) *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1) (356 SE2d 877) (1987).

[10] (Citation and footnote omitted.) *Williams v. Nat. Auto Sales*, 287 Ga. App. 283, 285 (1) (651 SE2d 194) (2007).

Ingles refused to pay Covington for these costs. In the face of a disputed debt embroiled in litigation and an immediate demand letter, it strains credulity for Covington to argue that it is guilty of merely failing to refund an overpayment, and not guilty of conversion. The trial court did not err in ruling that Covington converted the check.[11]

2. Covington next contends that the trial court erred in granting summary judgment to Ingles on its claim for attorney fees under OCGA § 13-6-11 because this issue must be resolved by a jury. The trial court found that "[Ingles] is entitled to [attorney] fees based on Covington's refusal to refund the money in spite of the outcome of the DeKalb litigation and causing [Ingles] to bear the unnecessary expense of bringing suit where no bona fide controversy exists" and ruled that the amount of attorney fees is to be determined at trial. We affirm this ruling.

OCGA § 13-6-11 provides:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

While questions of bad faith, stubborn litigiousness, and unnecessary trouble and expense are generally for the jury to decide, expenses of litigation under this Code section can be awarded on summary judgment, provided the movant is entitled to them as a matter of law.[12] The amount of the award of attorney fees as damages, however, is to be determined by a jury.[13]

In *D & H Constr. Co.*,[14] a case very similar to this case, we affirmed the trial court's grant of summary judgment to the plaintiff on its claim for attorney fees, where the appellant retained a duplicate payment to which it had no rightful claim. As in *D & H Constr. Co.*, the record here reflects that Covington accepted a

---

[11] See, e.g., *D & H Constr. Co. v. City of Woodstock*, 284 Ga. App. 314 (643 SE2d 826) (2007) (summary judgment on conversion claim proper where evidence showed that plaintiff tendered to defendant duplicate check; that plaintiff notified defendant of error and demanded return of the check; and that defendant refused to return the check); *Rivergate Corp. v. BCCP Enterprises*, 198 Ga. App. 761 (2) (403 SE2d 65) (1991).

[12] See *D & H Constr. Co.*, supra at 318-319 (2). See also *Graves v. Diambrose*, 243 Ga. App. 802, 803 (2) (534 SE2d 490) (2000).

[13] See *American Med. Transport Group v. Glo-An, Inc.*, 235 Ga. App. 464, 466 (3) (509 SE2d 738) (1998).

[14] Supra.

payment from Ingles that was intended for Ingles's current landlord and applied it to security costs, knowing that Ingles disputed the security costs debt; that Covington refused to return the check even after Ingles informed it of the mistake; and that Ingles was forced to bring this lawsuit to recover the mistaken payment. Additionally, as discussed in Division 1, supra, Covington's defense was unreasonable and incredible. Applying the any evidence standard under these circumstances,[15] the trial court did not err in ruling that Ingles was entitled to attorney fees as a matter of law, and we do the same here.[16] The trial court was also authorized to allow a jury to determine the amount.

3. Covington contends that the trial court erred in granting summary judgment to Ingles on its claim for punitive damages because this issue must be resolved by a jury. We agree.

OCGA § 51-12-5.1 (b) provides:

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

Subsection (d) of that Code section further provides:

> (1) In any case in which punitive damages are claimed, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made. This finding shall be made specially through an appropriate form of verdict, along with the other required findings. (2) If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case. It shall then be the duty of the trier of fact to set the amount to be awarded according to subsection (e), (f), or (g) of this Code section, as applicable.[17]

This Code section expressly provides that a jury must determine

---

[15] *MDC Blackshear, LLC v. Littell*, 273 Ga. 169, 174 (5) (537 SE2d 356) (2000) ("[a]n award of fees and expenses [under OCGA § 13-6-11] must be affirmed if there is any evidence to support it") (footnote omitted).

[16] *D & H Constr. Co.*, supra at 319 (2).

[17] OCGA § 51-12-5.1 (d) (1) & (2).

whether a complainant is entitled to punitive damages and if so, the amount to be awarded. Although a trial court — and the appellate courts — must consider whether there is any evidence to support an award of punitive damages, the question of whether to impose such an award is for the trier of fact.[18] Because we have found no authority and Ingles cites to none holding that a trial court can grant summary judgment to a claimant on its claim for punitive damages, we reverse that portion of the trial court's order granting summary judgment to Ingles on its claim for punitive damages and affirm the portion of the order ruling that a jury must determine the amount of punitive damages.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 3, 2009 ▉▉▉▉▉▉▉▉

*Michael A. Kessler*, for appellant.
*Hartman, Simons, Spielman & Wood, Samuel R. Arden, Jill R. Johnson*, for appellee.

---

[18] *Morales v. Webb*, 200 Ga. App. 788, 790 (409 SE2d 572) (1991); *Petrolane Gas Svc. v. Eusery*, 193 Ga. App. 860, 862 (1) (389 SE2d 355) (1989). See also *Wal-Mart Stores v. Forkner*, 221 Ga. App. 209, 210 (471 SE2d 30) (1996) (following bench trial on damages, trial court awarded plaintiff punitive damages).