A01A0126. NOBEL LODGING, INC. et al. v. HOLIDAY HOSPITALITY FRANCHISING, INC.
(548 SE2d 481)

MILLER, Judge.

Nobel Lodging, Inc. and Holiday Inns Franchising, Inc.[1] entered into a licensing agreement allowing Nobel to use Holiday's motel system at an inn near Daytona Beach, Florida. Nobel's six shareholders personally guaranteed its obligations of payment and performance under the license agreement. Nobel failed to improve the inn's physical facilities as promised in the license agreement, which default it did not cure despite demands from Holiday. Some months after Holiday terminated the agreement, Holiday notified the guarantors of the default and termination and demanded payment of monies due under the termination provisions of the agreement.

When the guarantors did not pay, Holiday filed the present suit against them and Nobel to recover. The guarantors denied liability, claiming that they had not been timely notified of Nobel's default, which notice they argued was a condition precedent to the guaranty obligations. They maintained that since notice did not come until after termination, they had no opportunity to cure the default and thus were not liable on the guaranty. They also filed an inarticulate and conclusory counterclaim, alleging that various unconnected sharp business tactics by Holiday entitled them to an unspecified recovery.

Holiday moved for summary judgment in its favor on the complaint and on the counterclaim, and the guarantors[2] cross-moved for summary judgment in their favor on the complaint. The trial court

---

[7] See OCGA § 16-13-49 (d) (2); *Bettis v. State of Ga.*, 228 Ga. App. 120, 121-122 (1) (491 SE2d 155) (1997).

[1] Holiday was subsequently renamed Holiday Hospitality Franchising, Inc.

[2] Holiday had dismissed one guarantor because of a bankruptcy stay.

entered summary judgment in favor of Holiday on its complaint and on defendants' counterclaim. The issues on appeal are (1) whether the language of the guaranty agreement conditioned the guaranty obligation on timely notice to the guarantors with an opportunity to cure any defaults, and (2) whether any disputed facts precluded summary judgment on the counterclaim. We hold that the guaranty contained no such condition precedent and that no disputed facts precluded summary judgment on the counterclaim. Thus, we affirm.

1. The guaranty agreement does not require notice to the guarantors nor posit any conditions precedent to trigger the guaranty obligations. The pertinent language reads:

> [T]he undersigned, jointly and severally, hereby . . . guarantee that all of Licensee's obligations under the above License, including any amendments thereto whenever made (the "License"), will be punctually paid and performed. Upon default by the Licensee and notice from Licensor, the undersigned will immediately make each payment and perform each obligation required of Licensee under the License. . . . The undersigned waive notice of amendment of the License and notice of demand for payment or performance by Licensee.

"[T]he construction of a contract is a question of law for the court based on the intent of the parties as set forth in the contract. . . ."[3] Reviewing this question of law de novo, we apply three steps to construe the contract.[4] We must first decide whether the contract language is ambiguous; if it is ambiguous, we must then follow the applicable rules of construction found in OCGA § 13-2-2; and if after doing so we determine that an ambiguity still remains, we remand the matter to allow a jury to resolve the ambiguity.[5]

Application of the first step provides the answer. The plain language of the guaranty is unambiguous. The individuals guarantee, without qualification, that all of Nobel's obligations under the license agreement will be punctually paid and performed. The guaranty does not expressly require notice of default to the guarantors nor provide them with an opportunity to cure. Rather, the guarantors expressly waived any notice of demand for payment or performance by Nobel. The guaranty is unconditional.

---

[3] (Footnote omitted.) *Deep Six v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000); see OCGA §§ 13-2-1; 13-2-3.

[4] *Deep Six*, supra, 246 Ga. App. at 73 (2).

[5] *Travelers Ins. Co. v. Blakey*, 180 Ga. App. 520 (349 SE2d 474) (1986); accord *Deep Six*, supra, 246 Ga. App. at 73 (2).

The guarantors contend that the first sentence of the second paragraph creates a condition. This sentence provides: "Upon default by the Licensee and notice from Licensor, the undersigned will immediately make each payment and perform each obligation required of Licensee under the License." They argue that this sentence requires notice of default with an opportunity to cure before the guaranty obligations are triggered. The guarantors misread the document. Rather than setting up a condition precedent to the general guaranty obligation, this sentence simply *adds* a specific guaranty obligation onto the guarantors' shoulders. "Upon default by the Licensee and notice from Licensor," i.e., in the event Nobel defaults and Holiday so notifies the guarantors, then the guarantors become themselves obligated to "immediately" make the payments and perform the obligations of Nobel under the license agreement. If such an event does not happen, i.e., if Holiday fails to notify the guarantors, then this specific "immediacy" requirement of personally and actually performing Nobel's obligations is not triggered. Rather, in that event the guarantors simply remain liable under the general guaranty obligation for Nobel's failure to punctually meet its payment and performance obligations set forth in the license agreement.

The guarantors' attempt to introduce parol evidence to justify a different interpretation of the guaranty obligation is ineffectual. "Parol contemporaneous evidence is generally inadmissible to contradict or vary the terms of a valid written instrument."[6]

2. The guarantors contend that the trial court erred in failing to directly address, in its summary judgment order, their cross-motion for summary judgment on Holiday's complaint. The trial court plainly denied that motion, as it expressly entered summary judgment in favor of Holiday on its complaint. Its failure to specify a cross-motion as denied is hardly grounds to reverse a final judgment resolving all claims in favor of Holiday.

3. In their final enumeration of error, the defendants contend that because certain material facts were disputed, the trial court erred in granting summary judgment in favor of Holiday on their counterclaim. To support this enumeration, the defendants in a hodgepodge manner give a laundry list of 33 unconnected facts which they claim are disputed. Defendants fail to argue in any cogent manner how these facts tie into any cognizable theories of recovery under Georgia law or under their ill-defined counterclaim.

Defendants are represented by counsel, and we are not inclined nor obligated to cull the record and the law to determine if an uncon-

---

[6] OCGA § 24-6-1; see *Choice Hotels Intl. v. Ocmulgee Fields*, 222 Ga. App. 185, 186-187 (1) (474 SE2d 56) (1996).

nected assortment of facts would allow defendants to pursue some sort of claim against Holiday to a jury trial. The most we can glean from the conclusory terse statements in the defendants' counterclaim is that defendants may be intending to pursue a claim against Holiday for breaching the implied covenant of good faith and fair dealing under the license agreement (arising out of the termination of the agreement) and a claim against Holiday for Holiday intentionally and maliciously interfering with an attempt by Nobel to sell the Holiday franchise to a third party. Neither of these tenuously stated claims is supported by the undisputed facts.

Regarding the "good faith and fair dealing" claim, it is undisputed that Nobel failed to meet its obligations to perform certain physical improvements on the inn as required by the license agreement, despite timely demands and notices from Holiday. Accordingly, Holiday had an express contract right to terminate the agreement. "There can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do."[7]

A tortious interference claim requires a showing that the defendant, acting improperly, without privilege, purposely and with the malicious intent to injure, induced a third party not to enter into or continue a business relationship with the plaintiff, resulting in the plaintiff suffering financial injury.[8] Here Holiday simply refused to consent to the transfer of the franchise to the third party. As the license agreement allowed Holiday this right, Holiday certainly was acting properly and within its contractual privilege. "The exercise of an absolute legal right is not and cannot be considered an interference with a contractual or potential contractual relationship."[9] Moreover, Holiday as the franchisor was not a stranger to either the proposed contract or its underlying business relationship, in which Nobel intended to sell the franchise to a third party, and thus Holiday could not be held for tortious interference with such.[10] "[A]ll parties to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships. [Cit.]"[11]

The court did not err in granting Holiday summary judgment on defendants' counterclaim.

---

[7] *Automatic Sprinkler Corp. &c. v. Anderson*, 243 Ga. 867, 868 (257 SE2d 283) (1979).

[8] *Choice Hotels*, supra, 222 Ga. App. at 188 (2).

[9] (Citation and punctuation omitted.) *Sowell v. Blackman*, 236 Ga. App. 705, 708 (1) (512 SE2d 713) (1999); accord *Russell Corp. v. BancBoston Financial Corp.*, 209 Ga. App. 660, 663 (4) (434 SE2d 716) (1993).

[10] *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 610 (2) (503 SE2d 278) (1998); accord *Pruitt Corp. v. Strahley*, 270 Ga. 430 (510 SE2d 821) (1999).

[11] *Atlanta Market Center*, supra, 269 Ga. at 610 (2).

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED MAY 7, 2001.

*Mark B. McManus,* for appellants.

*Mayfield, Commander & McMenamy, W. Scott Mayfield, Eric J. Frisch,* for appellee.