A05A0479. HALL v. ROSS et al.
(616 SE2d 145)

RUFFIN, Chief Judge.
After Ronald Hall sold his accounting business to Linda S. Ross, he filed suit against Ross and Linda S. Ross, CPA, P.C. (collectively, "Ross") for breaching the sales contract and bad faith failure to pay.[1] Ross filed counterclaims for breach of contract and quantum meruit. Ross moved for summary judgment on both Hall's claims and her counterclaims. The trial court granted Ross's motion with respect to Hall's claims, but denied it with respect to Ross's counterclaims. Hall appeals, arguing that genuine issues of fact preclude summary judgment. For reasons that follow, we reverse.

We conduct a de novo review of a trial court's ruling on summary judgment, and we construe the evidence and all reasonable inferences therefrom in a light most favorable to the nonmovant.[2] "Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of

---

[1] Hall also sued Linda S. Ross, CPA, Inc., which apparently was not a party to the contract. Thus, the trial court granted summary judgment in favor of this defendant, and Hall does not challenge this ruling on appeal.

[2] See *Botterbusch v. Preussag Intl. Steel Corp.*, 271 Ga. App. 190 (609 SE2d 141) (2004).

law."[3]

Viewed in this manner, the record demonstrates that Ross agreed to purchase Hall's accounting practice, and the parties signed a contract in June 1999. Ross agreed to pay $100,000 for the business, which included an initial deposit of $5,000, $30,000 at closing, and $15,000 due on August 15, 1999. The remaining $50,000 was "[p]ayable at 7% per annum for two years beginning 9/1/99." Under the contract, Hall, as the seller, warranted

> that the gross annual revenues of the Business shall be maintained at a minimum of $85,000.00. Should this annual revenue fall below $85,000.00 in the first year, [Hall] agrees to obtain clients for [Ross] to replace the revenue shortfall. Should [Hall] be unable to obtain replacement clients, then [Ross] shall be allowed to deduct the amount of lost revenue from the monthly purchase payments due to [Hall], with such deductions being considered as payment of the monthly purchase payments.

According to Hall, Ross made payments for twelve months, but stopped making payments in August 2000, claiming that the business had not made the $85,000 warranted by the contract. Hall then filed suit, alleging that Ross owed him an additional $27,391.24. Ross moved for summary judgment, asserting that the shortfall was attributable to reductions made under the contract.

The trial court granted Ross's motion for summary judgment, finding that the undisputed facts show that Ross paid Hall "the full amount owed under the terms of the parties' contract."[4] In his sole enumeration of error on appeal, Hall argues that the trial court erred in granting summary judgment in Ross's favor. We agree.

Initially, the three-step process for construing a contract is a matter of law for the court.[5] The trial court must first

> decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying

---

[3] Id.

[4] The trial court also found that there was "no basis for [Hall's] claim of 'Bad Faith Refusal to Pay.'" Hall does not challenge this ruling on appeal.

[5] See *Woody's Steaks, LLC v. Pastoria*, 261 Ga. App. 815, 817 (1) (584 SE2d 41) (2003).

the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.[6]

According to Hall, Ross failed to demonstrate that she met a condition precedent before reducing payment under the contract. Specifically, Hall contends that the contract gave him the opportunity to seek replacement clients before Ross was entitled to reduce payment.

A condition precedent is one that must be performed before a contract becomes absolute and obligatory upon the other party.[7] Moreover, "[c]onditions precedent, which are not favored in interpreting contracts, are created by language such as 'on condition that,' 'if,' and 'provided,' or by explicit statements that certain events are to be construed as conditions precedent."[8] In determining whether a contract contains a condition precedent, we look to the language of the agreement itself.[9] " 'If the language is plain and unambiguous and the intent may be clearly gathered therefrom, we need look no further.' "[10]

Here, the contract expressly provided that if annual revenue fell below $85,000 in the first year,

> [Hall] agrees to obtain clients for [Ross] to replace the revenue shortfall. Should [Hall] be unable to obtain replacement clients, then [Ross] shall be allowed to deduct the amount of lost revenue from the monthly purchase payments due to [Hall], with such deductions being considered as payment of the monthly purchase payments.

A plain reading of this clause demonstrates that the parties intended that Hall be given an opportunity to find replacement clients before Ross was entitled to deduct payments due. And Hall testified that he was willing to find such replacement clients, but that Ross never gave him the opportunity to do so.[11] Under these circumstances, the trial court erred in concluding as a matter of law that

---

[6] (Punctuation omitted.) Id.

[7] See OCGA § 13-3-4.

[8] *Choate Constr. Co. v. Ideal Elec. Contractors*, 246 Ga. App. 626, 628 (3) (541 SE2d 435) (2000).

[9] See id.; *Guthrie v. Guthrie*, 277 Ga. 700, 703 (2) (594 SE2d 356) (2004).

[10] *Guthrie v. Guthrie*, 277 Ga. at 703 (2).

[11] In her brief, Ross asserts that "[i]t is not known whether Hall could not or would not find replacement clients but the end result is that replacement clients were not offered to Ross." However, Ross provided no evidence of record to support her implied assertion that Hall was given an opportunity to find such replacement clients. Indeed, the record lacks any affidavit or

Ross had paid all amounts due under the contract.[12] Rather, a jury must determine whether Ross met her obligations under the contract before deducting payment.[13]

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

DECIDED JUNE 21, 2005.

*Stephanie R. Lindsey*, for appellant.
Linda S. Ross, *pro se*.

---

other sworn testimony from Ross to support such claim.

[12] Ross also argues that Hall's breach of a noncompete covenant justifies her refusal to pay him the remaining sums under the contract. But the record does not show that Ross argued before the trial court that Hall's breach of the covenant justified her failure to pay him, and this Court will not address arguments raised for the first time on appeal. See *Cohen v. Nudelman*, 269 Ga. App. 517, 523, n. 13 (604 SE2d 580) (2004). Moreover, this alleged breach serves as a basis for Ross's counterclaim. Although Ross moved for summary judgment on this claim, the trial court denied her motion, and she has not appealed this ruling.

[13] See *Monroe v. Bd. of Regents &c. of Ga.*, 268 Ga. App. 659, 666-667 (4) (602 SE2d 219) (2004).