A08A1949. GENERAL STEEL, INC. v. DELTA BUILDING
SYSTEMS, INC. et al.

(676 SE2d 451)

PHIPPS, Judge.

General Steel, Inc. appeals rulings on cross-motions for summary judgment in connection with its breach of guaranty claim against Benjamin Eichholz, who had executed a guaranty on behalf of his company, Delta Building Systems, Inc. Because the trial court erred in the contested rulings, we reverse.

On appeal from the denial or grant of summary judgment, this court conducts a de novo review of the evidence to determine whether there exists a genuine issue of material fact and whether the

undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

In 2003, Delta, a construction company, established an account with General Steel to purchase building materials on credit. In August 2005, Eichholz executed a personal guaranty of Delta's indebtedness to General Steel, handwriting thereupon: "This guarantee shall be limited to the amount of $30,000 outstanding at any time. I will receive all billings reelect charges and payments on a monts basis."[2] Thereafter, from August through December, Delta obtained building materials from General Steel, charged the costs thereof to its account, and received from General Steel related invoices, which Delta did not pay.

To collect the outstanding amount owed on Delta's account of approximately $30,000, General Steel filed suit in June 2006 against Delta and Eichholz alleging theories of open account and personal guaranty, respectively. A consent judgment was entered against Delta, but Eichholz denied liability. General Steel and Eichholz each sought summary judgment on the breach of guaranty claim.

General Steel argued it was entitled to summary judgment, citing undisputed evidence that Delta had been found liable to it for indebtedness and that Eichholz had executed a guaranty of Delta's indebtedness to it, which General Steel acknowledged was expressly limited to an amount of $30,000.

Eichholz argued he was entitled to summary judgment, asserting that the handwritten provision within the guaranty that he would receive monthly billings reflecting charges and payments on Delta's credit account constituted a condition precedent. Eichholz cited undisputed evidence that General Steel had not sent directly to him any invoice or payment information regarding Delta's account.

The trial court agreed with Eichholz that the provision constituted a condition precedent that General Steel had not performed. It thus ruled in Eichholz's favor on the parties' cross summary judgment motions. General Steel challenges these rulings on appeal.

General Steel does not dispute that the provision cited by Eichholz contemplated that monthly billings would be sent by it to Eichholz, and the company concedes that it did not send such information directly to Eichholz. Nevertheless, it contests the trial court's conclusion that, as a matter of law, the provision constituted a condition precedent, such that its failure to provide the account information relieved Eichholz from performing his obligation under

---

[1] *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

[2] The record shows that the parties and the trial court acknowledged the second sentence as "I will receive all billings reflecting charges and payments on a monthly basis."

the guaranty to pay up to $30,000 of Delta's indebtedness to it. Moreover, it claims that its failure to send the account information directly to Eichholz was not a material breach of the guaranty.

1. We consider first General Steel's contention that the trial court erred in granting Eichholz summary judgment based upon its conclusion that the cited provision of the guaranty constituted a condition precedent.

The usual rules of contract construction are applicable when determining the meaning and effect of a guaranty,[3] the cardinal rule of which is to ascertain the intention of the parties.[4]

> The construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, no construction is required, and the court simply enforces the contract according to its clear terms. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2.[5]

> Ambiguity exists where the words used in the contract leave the intent of the parties in question — i.e., that intent is uncertain, unclear, or is open to various interpretations. Conversely, no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation.[6]

---

[3] *Keane v. Annice Heygood Trevitt Support Trust*, 285 Ga. App. 155, 157 (645 SE2d 641) (2007).

[4] OCGA § 13-2-3.

[5] *Covington Square Assocs., LLC v. Ingles Markets*, 283 Ga. App. 307, 308 (1) (641 SE2d 266) (2007) (citation and punctuation omitted).

[6] *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 106 (1) (661 SE2d 578) (2008) (citations and punctuation omitted).

Pursuant to OCGA § 13-3-4, "[a] condition precedent must be performed before the contract becomes absolute and obligatory upon the other party." While conditions precedent are not favored in interpreting contracts,[7]

> (w)ords such as "on condition that," "if," and "provided," are words of condition, and in the absence of indication to the contrary, the employment of such words in a contract creates conditions precedent. Also, express statements to the effect that a condition is to be construed as a condition precedent are often contained in contracts and are entitled to be so construed in carrying out the intent of the parties.[8]

The provision at issue in this case employed no explicit words of condition, and there are no expressions in the entirety of the guaranty to the effect that the cited provision is to be construed as a condition precedent. We conclude as a matter of law that the contractual language contained no ambiguity as to whether a condition precedent was created — it did not.[9] Although Eichholz deposed that his guaranty was effective only if he received from General Steel monthly billings, such extrinsic evidence is unavailing.[10] Where, as here, "the contract's terms are clear and unambiguous and do not clearly establish a condition precedent, [a court] cannot construe the contract to create one."[11] In doing so in this case, the trial court erred.[12] Consequently, the grant of summary judgment to Eichholz was improper.

---

[7] *Choate Constr. Co. v. Ideal Elec. Contractors*, 246 Ga. App. 626, 628 (2) (541 SE2d 435) (2000); *Fulton County v. Collum Properties*, 193 Ga. App. 774, 775 (1) (b) (388 SE2d 916) (1989).

[8] *Collum Properties*, supra (citation and punctuation omitted); see *Self v. Smith*, 216 Ga. 151, 153 (1) (115 SE2d 355) (1960).

[9] See *Self*, supra at 152-153; *Nobel Lodging v. Holiday Hospitality Franchising*, 249 Ga. App. 497, 498-499 (1) (548 SE2d 481) (2001); *Collum Properties*, supra at 774-776; compare *Page v. Baylard*, 281 Ga. 586, 587 (1) (642 SE2d 14) (2007); *Athens Heart Center v. Brasstown Valley Resort*, 275 Ga. App. 607, 608 (621 SE2d 565) (2005); *Hall v. Ross*, 273 Ga. App. 811, 813 (616 SE2d 145) (2005).

[10] See *Nobel Lodging*, supra (where language of guaranty was unambiguous, parol evidence was ineffectual to add a condition precedent).

[11] *Choate Constr. Co.*, supra at 628 (3) (citation omitted); see also OCGA § 13-2-2 (1) (pertinently providing that parol evidence is inadmissible to add to, take from, or vary a written contract and that "[a]ll the attendant and surrounding circumstances may be proved and, *if there is an ambiguity*, latent or patent, it may be explained") (emphasis supplied).

[12] See *Hall*, supra ("In determining whether a contract contains a condition precedent, we look to the language of the agreement itself. If the language is plain and unambiguous and the intent may be clearly gathered therefrom, we need look no further.") (punctuation and footnotes omitted).

2. General Steel contends that its failure to comply with the provision was not a material breach of the guaranty so as to have relieved Eichholz from performing his obligation thereunder. Furthermore, it claims that Eichholz was not prejudiced by not receiving directly from it copies of Delta's monthly billings.

Eichholz may be excused from performing his obligation under the guaranty upon evidence that General Steel committed

> a material breach, a substantial failure to perform. A breach which is incidental and subordinate to the main purpose of the contract does not warrant termination nor does a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement.[13]

OCGA § 10-7-1 defines a guaranty as a contract "whereby a person obligates himself to pay the debt of another in consideration of a benefit flowing to the surety or in consideration of credit or indulgence or other benefit given to his principal, the principal in either instance remaining bound therefor." Accordingly, the main purpose of the guaranty in this case was for Eichholz to obligate himself personally to pay General Steel up to $30,000 of his corporation's indebtedness so that his company could obtain on credit building materials from General Steel. It is undisputed that, after Eichholz gave General Steel the personal guaranty, Delta obtained on credit approximately $30,000 of building materials from General Steel, failed to pay for those materials, and submitted to a judgment for its indebtedness to General Steel.

Nevertheless, Eichholz maintains that General Steel's failure to comply with the provision at issue was a material breach of the guaranty. He complains, "The failure of [General Steel] to send those statements to [him] prevented him from assuring they would be paid, i.e. the Appellant cannot benefit from the impediment it placed which was inserted for the precise purpose of monitoring the guaranteed obligation." Eichholz cites evidence that, at all times relevant, he was engaged in a busy law practice in Savannah and did not deal with the day-to-day operations of Delta, which had its office in Statesboro.

A surety is discharged from his obligation(s) under a guaranty by any act of the creditor that "injures the surety or increases his risk

---

[13] *Lager's, LLC v. Palace Laundry*, 247 Ga. App. 260, 263 (1) (543 SE2d 773) (2000) (citations and punctuation omitted); see generally *Mayor &c. of Douglasville v. Hildebrand*, 175 Ga. App. 434, 436 (1) (333 SE2d 674) (1985) (to trigger the right to rescission, the act failed to be performed must go to the root of the contract).

or exposes him to greater liability."[14] Eichholz claims that General Steel's failure to provide billings directly to him on a monthly basis prevented or impeded him from making sure that invoices were paid and from monitoring his personal obligation. But the evidence does not show that Eichholz was so injured; nor does it show that his risk was thereby increased. Rather, Eichholz deposed that he was president and sole shareholder of Delta; that he was aware that Delta was receiving materials from General Steel to complete a certain construction project; that had he received copies of General Steel's invoices, he would have made sure that his company paid General Steel; and pertinently, that he could have obtained from his company at any time copies of General Steel's invoices. Furthermore, given that Eichholz's liability under the guaranty was expressly capped at $30,000, there is no evidence that General Steel's failure to comply with the cited provision exposed Eichholz to greater liability.

Under these circumstances, General Steel's failure to provide billings to Eichholz on a monthly basis was incidental and subordinate to the main purpose of the guaranty; was not substantial and fundamental so as to defeat the object of the parties in making the contract; and was not shown to have injured Eichholz, increased his risk, or exposed him to greater liability. While Eichholz's guaranty obligation could have been made subject to a condition precedent, the language within the guaranty fell short of doing so.[15] Because General Steel's failure to comply with the cited term was not a material breach of the guaranty so as to have discharged Eichholz from his obligation thereunder, the trial court erred in denying General Steel summary judgment.[16]

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

---

[14] OCGA § 10-7-22.

[15] See Division 1, supra; OCGA § 10-7-1 (pertinently providing, "Sureties, including those formerly called guarantors, are jointly and severally liable with their principal unless the contract provides otherwise").

[16] See generally *Shah v. Taco Del Sur*, 257 Ga. App. 224 (570 SE2d 654) (2002) (where guaranty provided that guarantor would receive notices of default "which may be sent to [principal]," the trial court properly rejected guarantor's argument that he was not obligated under guaranty because, although he admittedly had received notice of default addressed to him as "registered agent" of the principal of the guaranty, he had not received a separate notice of the default as "guarantor"); compare *Burnham v. Cooney*, 265 Ga. App. 246, 248 (3) (593 SE2d 701) (2004) (a jury question was presented whether lawyer's failure to provide his client with billing statements as required by fee contract constituted a material breach of such contract excusing client from payment of some portion of the $34,353.30 in fees, where there was evidence that client repeatedly asked lawyer for billing statements during the pendency of the litigation, but was not provided with any; that client discovered during the litigation that the target defendant was judgment proof; that client therefore told lawyer that he did not want to spend a lot of money on the suit; and that client would or might have withdrawn from the litigation, had he been billed periodically).

DECIDED MARCH 27, 2009

*Jones, Cork & Miller, Hubert C. Lovein, Jr., Cater C. Thompson,* for appellant.

*Duffy & Feemster, Stanley E. Harris, Jr., Benjamin S. Eichholz,* for appellees.