**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 09-1125**

———————

MARCUS BEASLEY; DENISE BEASLEY,

              Plaintiffs – Appellants,

        v.

ARCAPITA INCORPORATED; CAJUN HOLDING COMPANY; CAJUN
OPERATING COMPANY; CRESCENT CAPITAL INVESTMENTS,
INCORPORATED,

              Defendants – Appellees.

———————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.    Richard D. Bennett, District Judge.
(1:08-cv-00804-RDB)

———————

Argued:  March 25, 2011            Decided:  June 23, 2011

———————

Before MOTZ, GREGORY, and SHEDD, Circuit Judges.

———————

Affirmed by unpublished opinion.  Judge Shedd wrote the majority
opinion, in which Judge Motz joined.  Judge Gregory wrote a
dissenting opinion.

———————

**ARGUED:** Erin M. Tanner, WAKE FOREST UNIVERSITY, School of Law,
Winston-Salem, North Carolina, for Appellants.  James Charles
Rubinger, PLAVE KOCH PLC, Reston, Virginia, for Appellees.  **ON
BRIEF:** Paul M. Vettori, John J. Kenny, KENNY & VETTORI, LLP,
Towson, Maryland, for Appellants.  Benjamin B. Reed, PLAVE KOCH
PLC, Reston, Virginia, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Marcus and Denise Beasley appeal the district court's order dismissing their claim against Arcapita Incorporated, Cajun Holding Company, Cajun Operating Company, and Crescent Capital Investments, Incorporated (collectively "Arcapita"). For the reasons set forth below, we affirm the judgment of the district court.

I.

The Beasleys are the sole shareholders of Beasley Food Ventures, Inc. ("Ventures"). On December 17, 2004, Ventures entered into a franchise agreement ("the Agreement") with AFC Enterprises, Inc. to own and operate a Church's Chicken restaurant at the Baltimore/Washington International Airport.

The Agreement states that it is "between AFC Enterprises Inc. . . . and Beasley Food Ventures, Inc., a Maryland corporation . . . ("Franchisee")." Supp. J.A. 6. In two internal sections of the Agreement, the Beasleys signed or initialed above the printed term "franchisee" without a corporate designation. However, on the signature page, Denise Beasley executed the Agreement in her corporate capacity as President of Ventures, and Marcus Beasley signed only as a witness. Additionally, Marcus and Denise Beasley individually executed a separate Guaranty and Subordination Agreement

3

personally obligating themselves for Ventures' debts arising under the Agreement.

In December 2004, Arcapita acquired the Church's Chicken business from AFC. Subsequently, although the menu AFC had provided to Ventures included pork products, Arcapita banned the sale of pork in Church's Chicken restaurants. Arcapita permitted Church's Chicken restaurants that had previously sold pork products to continue doing so. However, Arcapita refused to allow new restaurants that had not previously sold pork products to do so in the future.

The Beasleys, who are African-American, brought this action asserting a single count of racial discrimination in violation of 42 U.S.C. § 1981. The Beasleys allege that they were the only existing franchise that was forbidden to sell pork products and that Arcapita forbade them from doing so because of their race. Consequently, they assert that their franchise failed because of their inability to sell pork products. Relying on the Supreme Court's holding in Domino's Pizza, Inc. v. McDonald, 546 U.S. 470 (2006), the district court found that the Beasleys could not bring a § 1981 claim because they were not parties to the Agreement and, thus, had no rights under the Agreement. Therefore, the court dismissed their case for failure to state a claim.

4

## II.

We review de novo a district court's order dismissing a claim under Federal Rule of Civil Procedure 12(b)(6). See Duckworth v. State Admin. Bd. of Election Laws, 332 F.3d 769, 772 (4th Cir. 2003). To survive a Rule 12(b)(6) motion, a plaintiff must allege enough facts "to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When considering an order dismissing a claim under Rule 12(b)(6), we assume all factual allegations in the pleadings to be true. Erickson v. Pardus, 551 U.S. 89, 94 (2007). "[W]hen a defendant attaches a document [such as the Agreement] to its motion to dismiss, a court may consider it in determining whether to dismiss the compliant if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." Am. Chiropractic Ass'n v. Trigon Healthcare Inc., 367 F.3d 212, 234 (4th Cir. 2004)(internal citations omitted).

## III.

In Domino's Pizza, the Supreme Court held that a corporation's sole shareholder could not bring a § 1981 action pursuant to a franchise agreement because he was not a party to,

5

and did not have rights under, the contract. The Court expressly limited relief under § 1981 to parties with rights under a contract, stating:

> [A] plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes "to make and enforce." Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's.

Domino's Pizza, 546 U.S. at 479-80. The Court based this ruling, in part, on basic precepts of corporate law. "[I]t is fundamental corporation and agency law — indeed, it can be said to be the whole purpose of corporation and agency law — that the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts." Id. at 477.

The Beasleys argue that the district court erred in dismissing their claim because they are parties with rights under the Agreement consistent with Domino's Pizza. Specifically, they assert that by virtue of the Guarantee of Franchisee Agreement, they have taken on significant financial obligations under the Agreement that entitle them to bring a § 1981 claim. Additionally, the Beasleys contend that they are individually parties to the Agreement pursuant to Section XXV. In particular, they point to language stating that they have

6

"individually, and jointly and severally, executed this Agreement." Supp. J.A. 43.

We find both arguments to be without merit. First, any obligations the Beasleys have under the Guarantee of Franchise Agreement do not create any rights for them under the Agreement, which the Supreme Court has explicitly required for a claim of relief under § 1981. Second, Section XXV does not establish that the Beasleys are individually parties to the Agreement. This section only applies when the franchisee is a corporation, thus defeating the Beasleys' claims that they are individual franchisees or parties to the Agreement.

Moreover, the specific language referenced by the Beasleys stating that they "individually . . . executed this Agreement" does not establish that they are parties to the Agreement because, factually, the Beasleys did not individually execute the Agreement. First, Marcus Beasley did not execute the Agreement in any manner. Second, Denise Beasley signed above the notation "President." Thus, she executed the Agreement only in her corporate – not individual – capacity. Signing in this representative capacity does not make her an individual party to the Agreement, and, therefore, no representation in the Agreement applies to her as an individual. See Ga. Code Ann. § 11-3-402(b) (if an authorized representative signs on behalf of another person or entity, the representative is not personally

7

liable); <u>Dewberry Painting Centers, Inc. v. Duron Inc.</u>, 508 S.E.2d 438 (Ga. App. 1998) (holding that where corporate president "signed the document only in his representative capacity," the president was not personally liable under the document).[1]

In short, we hold that, according to the terms of the Agreement, Ventures is the franchisee.[2] Therefore, Ventures is the named party with rights under the Agreement. In contrast, the Beasleys, as sole shareholders of Ventures, are neither the franchisee nor a named party with rights under the Agreement. Therefore, pursuant to <u>Domino's Pizza</u>, the Beasleys cannot bring a § 1981 claim.

---

[1] In his dissent, our colleague suggests that the implication of our decision is that Denise Beasley would need to sign the Agreement twice to be bound as an individual. That is not so. Denise Beasley could have noted she was also signing in her individual capacity, or she could have signed without noting that she was doing so in her corporate capacity.

[2] The identity of the franchisee is unambiguous. Despite the fact that the Beasleys signed or initialed above the printed term 'franchisee,' the Agreement when read as a whole is only capable of being read as a contract between Arcapita and Ventures. <u>See</u> <u>Gen. Steel, Inc. v. Delta Bldg. Sys. Inc.</u>, 676 S.E.2d 451, 453 (Ga. App. 2009)(pursuant to Georgia law, which controls the Agreement, "no ambiguity exists where, examining the contract as a whole . . . the contract is capable of only one reasonable interpretation.").

IV.

For the foregoing reasons, we affirm the district court's order dismissing the Beasleys' complaint.[3]

AFFIRMED

---

[3] Arcapita moved to dismiss this appeal on res judicata grounds. We deny the motion. See Pueschel v. United States, 369 F.3d 345, 356 (4th Cir. 2004) (recognizing the claim splitting waiver exception to res judicata).

GREGORY, Circuit Judge, dissenting:

The majority opinion comes to the unfortunate conclusion that contracts simply do not mean what they say. In reviewing this motion to dismiss, we must accept the facts in the complaint as true, and draw all reasonable inferences in favor of the Beasleys. Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009). While we need not accept as true any legal conclusions, id., in a contract dispute, we must construe any ambiguous provisions in the Agreement against Arcapita as the drafter. Department of Community Health v. Pruitt Corp., 673 S.E.2d 36, 39 (Ga. App. 2009). Most importantly in this case, even if we may foresee the claim's later failure at the summary judgment stage, we must refrain from examining its underlying merits. Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

As drafted by Arcapita, the plain language of the Agreement makes clear that Ms. Beasley's signature alone was sufficient to in fact make her "individually" a party to the Agreement. J.A. 43. Section 25 states in part that:

> In the event Franchisee named herein is a corporation at the time of the execution of this Agreement, it is warranted, covenanted and represented to Franchisor that:
>
> . . .
>
> 25.02 The above-named person or persons[,] [Ms. Beasley,] has (have) individually, and jointly and

10

> severally, executed this Agreement, and such person, or one of such persons, [Ms. Beasley,] is and shall be the chief executive officer of the Franchisee corporation[,] [Ventures] . . . .

J.A. 43 (emphasis added). Section 25 only applies when the franchisee is a corporation because it creates another layer of liability for the individual signatory, which would otherwise be unnecessary in circumstances where the lone franchisee is an individual person. Section 25.02 is a guarantee that the person "above-named" -- Ms. Beasley's name appears without title several times in the preceding parts of the Agreement, J.A. 41-42 -- will execute the Agreement as an individual, and as the chief executive of the corporation. It therefore establishes obligations under the Agreement for both the signatory as an individual and as a representative of the corporation.

Thus, through her single signature, Ms. Beasley bound herself as an individual and her corporation, Ventures, to the Agreement. J.A. 44; see also Restatement (Second) of Contracts § 289(1) (1981) ("Where two or more parties to a contract promise the same performance to the same promisee, each is bound for the whole performance thereof, whether his duty is joint, several, or joint and several."). Ms. Beasley therefore had the same specific rights and duties under the Agreement as Ventures, rights which were enforceable under § 1981. See Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476-80 (2006) ("Section 1981

11

offers relief when racial discrimination . . . impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."). Indeed, at oral argument, no one seemed to doubt that if Ms. Beasley had in some way failed to perform under the Agreement, Arcapita could use section 25.02 to hold both her and Ventures liable.

Nonetheless, the majority holds that this language did not make Ms. Beasley a party to the Agreement because "factually, [she] did not individually execute the agreement." See Op. at - -. The majority believes that Ms. Beasley had to either sign the Agreement twice, once as an individual and again as the President of Ventures, or somehow otherwise note that she was also signing the Agreement in her individual capacity. See Op. at -- n.1. And yet, the terms of the Agreement did not necessitate two signatures, and, given that Arcapita clearly included section 25.02 as a means of securing Ms. Beasley's individual liability, any further notation would have been superfluous.* Again, that section states that Ms. Beasley -- who

---

\* The suggestion that an amendment was somehow needed in order for Ms. Beasley to obtain standing under the Agreement is absurd. Section 25.02 clearly means that there was no manner in which Ms. Beasley could have signed the Agreement that would have prevented her from being held individually liable. Ms. Beasley's mere execution of the Agreement was her representation to Arcapita that she would be held individually liable, and that (Continued)

12

is the actual signatory, and is repeatedly "above-named" without title, J.A. 41-42 -- has "individually" executed the Agreement.

In fact, the Georgia law cited by the majority provides still more interpretive presumptions in favor of Ms. Beasley's claim. Dewberry Painting Centers, Inc. v. Duron Inc. supports my position in so far as it holds that the act of signing above the title "President" will not, as a matter of law, preclude personal liability. 508 S.E.2d 438, 440-41 (Ga. App. 1998). Similarly, my colleagues mistakenly rely on Ga. Code Ann. § 11-3-402(b), which applies only where a contract is "unambiguous." The Agreement is, at best, ambiguous, and thus we should instead apply Ga. Code Ann. § 11-3-402(b)(2), which instructs us to presume that the corporate representative is individually liable on the instrument.

Mr. Beasley similarly became a party to the contract through his repeated initialing of the Agreement as a "franchisee." See J.A. 41, 42. Further, since the Beasleys

---

she was able to bind Ventures as its chief executive officer. The presence of a title beneath her signature was therefore unnecessary and redundant. Thus, the Agreement would need to have been amended so as to preclude her individual liability, not to create it, and Ms. Beasley probably would have welcomed such an amendment.

And yet, Arcapita likely required her to execute the unmodified Agreement as a precondition to obtaining a franchise; thereby making it impractical or impossible for her to have insisted on any amendments.

13

also functioned as sureties through the Guarantee of Franchise Agreement, they likely have an alternative ground to claim § 1981 standing. See, e.g., RBA Capital, LP. v. Anonick, No. 3:08cv494, 2009 WL 960090, at *2 (E.D. Va. April 8, 2009) (noting that "conceptually" a contract surety could bring a lawsuit on behalf of the principal (citing Smith Setzer & Sons, Inc. v. South Carolina Procurement Review Panel, 20 F.3d 1311, 1317 (4th Cir.1994))); see also Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 436 (4th Cir. 2006) (permitting third-party beneficiaries to bring § 1981 actions).

The Beasleys sought to pursue their American dream of owning and operating a business franchise. However, according to the allegations in the complaint, the discriminatory actions of Arcapita kept their franchise from ever growing beyond its infancy. Given the clarity of section 25.02 and the deference we must give to the complaint at this early juncture, I am convinced that the Beasleys factually were parties to the Agreement. They are therefore entitled to the opportunity to vindicate their rights under § 1981 in the district court.

Regrettably, however, the majority's decision will bar any court from ever reaching the merits of the Beasleys' racial discrimination claim. While the lawsuit may ultimately prove to be unsuccessful, at present, there is no just basis for this Court to hold that the Beasleys lack standing. For these

14

reasons, I cannot join the "factual" analysis of the majority, and must dissent.