**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 19, 2015**

# In the Court of Appeals of Georgia

A15A1048. MURPHY v. BCCTC ASSOCIATES, INC. et al.          BO-052

BOGGS, Judge.

M. Vincent Murphy, III, appeals from a trial court order denying his motion for summary judgment and granting the partial motion for summary judgment filed by BCCTC Associates, Inc., C & M Management, Inc., and Boston Capital Partners, Inc. ("the plaintiffs") in this case involving Murphy's obligations pursuant to a guaranty. For the following reasons, we affirm in part and reverse in part.

"Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. On appeal, we review the grant or denial of summary judgment de novo, construing the evidence and all inferences in a light most favorable to the nonmoving party." (Citation and

punctuation omitted.) *Seki v. Groupon, Inc*., 333 Ga. App. 319 (775 SE2d 776) (2015).

So viewed, the evidence showed that Murphy and E. Donald Dressel were the members of 2745 Hapeville Road Partners LLC, which, in turn, was the general partner of Summerdale/AAFHI, L.P.,[1] which was the general partner of Summerdale L.P.[2] Murphy and Dressel were also members of Summerdale Advisors, LLC, which was the general partner of Summerdale/AAHFI, L.P. II,[3] which, in turn, was the general partner for Summerdale Partners, L.P. II.[4]

On July 3, 1997, Summerdale/AAFHI, L.P. (the "General Partner") entered into an "Amended and Restated Agreement of Limited Partnership," with Boston Capital Corporate Tax Credit Fund VI, L.P. ("BCC VI"), as the limited partner, and BCCC, Inc., as the special limited partner, for the purpose of developing apartment properties that would qualify for low income housing tax credits. On December 15, 1997, Summerdale/AAFHI, L.P. II (the "General Partner"), entered into a "Third Amended and Restated Agreement of Limited Partnership" for the same purpose with Boston

---

[1] Atlanta Affordable Housing for the Future was the limited partner.

[2] Boston Capital Tax Credit Fund VI, L.P. was the limited partner.

[3] Atlanta Affordable Housing for the Future was the limited partner.

[4] Boston Capital Tax Credit Fund X, L.P. was the limited partner.

2

Capital Corporate Tax Credit Fund XI, L.P. ("BCC XI") as the limited partner and BCCC, Inc. as the special limited partner. Murphy and Dressel executed a "Limited Guaranty" in conjunction with each of these agreements (hereinafter "the LPAs") to guaranty the obligations of the General Partners thereunder. The guarantees specifically noted that Murphy was to guaranty the General Partners' obligations under the LPAs to make certain "'Operating Deficit Loans' to repurchase the Investment Partnership's Interest in certain circumstances and to guaranty payment of the Asset Management Fee . . . as such term[ ] [is] defined in the [LPAs]." And the LPAs likewise provided that the General Partner was obligated to pay Asset Management Fees, and repurchase the Interest of the Investment Partnership upon the occurrence of an event of default, or if the General Partner failed to make Operating Deficit loans. The plaintiffs asserted that an event of default occurred requiring the General Partners to repurchase the Interest of the Investment Partnership when Summerdale Partners, L. P. and Summerdale Partners, L.P. II each defaulted on a mortgage note.

In November 2009, the plaintiffs (general partners of the parties to the LPAs or their successors in interest) filed suit against Murphy, Dressel, the General Partners Summerdale/AAHFI, L.P. and Summerdale/AAHFI, L.P. II, asserting claims for

3

breach of contract, enforcement of the guarantees, and specific performance. With regard to the guarantees, the plaintiffs asserted that as guarantors of the obligations of the General Partners, Murphy and Dressel were responsible for unpaid asset management fees and were required to make Operating Deficit Loans following the occurrence of default. Following some discovery, the plaintiffs moved for partial summary judgment "on the issue of liability and damages under the partnership agreements and guaranties." They "reserv[ed] the issue of recovery for contractual attorneys' fees under the guaranties for a later determination."

Nearly a year and a half later, Murphy and Dressel moved for summary judgment on the plaintiffs' complaint. After a hearing of the argument of counsel, the trial court granted the plaintiffs' motion and denied the motions filed by Murphy and Dressel. Both Murphy and Dressel appealed to this court, but Dressel withdrew his appeal after agreeing to settle with the plaintiffs.

On appeal, Murphy argues that the plaintiffs' claims are barred by the statute of frauds; Boston Capital and Boston Capital Partners, Inc. do not have standing; the guarantees are too vague to enforce; fact questions remain regarding fiduciary duty, waiver and estoppel; the damage claims are based upon inadmissible hearsay; the plaintiffs have increased the risk to him in violation of OCGA § 10-7-22; fact

4

questions remain regarding the plaintiffs' alleged damages; and the plaintiffs failed to comply with all preconditions for recovery under the guarantees.

Murphy executed two guarantees: one on July 3, 2007 in favor of Summerdale Partners, L.P., and a second on December 15, 2007 in favor of Summerdale Partners, L.P. II, each entity identified therein as "the Partnership." The July 3, 2007 guaranty provided in relevant part:

> WHEREAS, concurrently with the execution of this Guaranty, Summerdale/AAHFI, L.P., a Georgia limited partnership . . . (the "General Partner"), and BCCC, Inc., a Massachusetts corporation (the "Special Limited Partner") and Boston Capital Corporate Tax Credit Fund VI, ["BCC VI"] a Limited Partnership, a Massachusetts limited partnership (the "Investment Partnership"), have entered into that certain Amended and Restated Agreement of Limited Partnership of Summerdale Partners, L. P. (the "Agreement") pursuant to which the General Partner has agreed, *inter alia*, to make certain Excess Development Cost advances and certain Operating Deficit Loans to repurchase the Investment Partnership's Interest in certain circumstances and to guaranty payment of the Asset Management Fee and the Development Fee (as such terms are defined in the Agreement), and the Investment Partnership has agreed to contribute capital to the Partnership according to the terms and conditions set forth therein, a true

copy of which is attached hereto as *Exhibit A*, by this reference fully incorporated herein . . .[5]

Each paragraph six of the guarantees provides:

The Partnership and Guarantors agree that so long as the Obligations hereunder remain outstanding, the Investment Partnership shall be a third party beneficiary under this Agreement and shall be entitled to enforce the provisions hereof as if it were a party hereto. The Guarantors each hereby irrevocably authorize and empower the Investment Partnership, and irrevocably appoint the Limited Partner, the Guarantors' attorney-in-fact, to demand, sue for, collect and receive every payment or advance due under the obligations and give security therefor and to file and invoke claims and such other proceedings in their names as the Investment Partnership may deem necessary or advisable to enforce the obligations under this Guaranty, *provided, however, that the Investment Partnership shall only be entitled to exercise such rights if the Partnership fails to take such action within thirty (30) days after the Investment Partnership makes demand on the Partnership to do so.*

(Emphasis supplied.)

---

[5] The December 15, 2007 guarantee was in favor of Summerdale Partners, L.P. II and named Boston Capital Corporate Tax Credit Fund X, L.P. ("BCC X") as the "Investment Partnership."

Murphy argues that the plaintiffs failed to comply with this provision prior to seeking to enforce the guarantees. Specifically, Murphy contends that under paragraph six, the plaintiffs can only enforce the guarantees against him after demanding that the "Partnerships" (either Summerdale Partners L.P. or Summerdale Partners L.P. II) pursue a claim under the guarantees and the Partnerships fail to do so. The plaintiffs, on the other hand, argue that the first sentence of paragraph six "authorizes the Investment Partnership as third party beneficiaries to bring a direct action to enforce the Guaranties against the Guarantors," and that the second sentence "does not apply to this lawsuit because the Plaintiffs are seeking to enforce the Guaranties against the Guarantors, and are not suing the Partnership on behalf of the Guarantors." We disagree.

"Georgia courts strictly construe guaranty agreements in favor of the guarantor. And the guarantor's liability cannot be extended by implication or interpretation." (Citations and punctuation omitted.) *AAF-McQuay v. Willis*, 308 Ga. App. 203, 216 (2) (707 SE2d 508) (2011). The question here is whether the language in paragraph six of the guarantees constitutes a condition precedent. OCGA § 13-3-4 provides that "[a] condition precedent must be performed before the contract becomes absolute and obligatory upon the other party." And

7

[w]hile conditions precedent are not favored in interpreting contracts, words such as "on condition that," "if," and "provided," are words of condition, and in the absence of indication to the contrary, the employment of such words in a contract creates conditions precedent. Also, express statements to the effect that a condition is to be construed as a condition precedent are often contained in contracts and are entitled to be so construed in carrying out the intent of the parties.

(Citations, punctuation and footnotes omitted.) *General Steel v. Delta Bldg. Systems*, 297 Ga. App. 136, 139 (1) (676 SE2d 451) (2009).

The usual rules of contract construction are applicable when determining the meaning and effect of a guaranty, the cardinal rule of which is to ascertain the intention of the parties. The construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, no construction is required, and the court simply enforces the contract according to its clear terms. … Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. The existence or nonexistence of an ambiguity is a question of law for the court. If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2.

Id. at 138 (1).

The plain language of paragraph six of the guarantees provides that the Investment Partnership is the third-party beneficiary to the guarantees and entitled to enforce them "as if it were a party hereto." This paragraph also empowers the Investment Partnership to demand, sue for, collect and receive payment due under the obligations and to file and invoke claims in its name to enforce the obligations under the Guaranty, "*provided*, however, that the Investment Partnership *shall only be entitled to exercise such rights if* the Partnership fails to take such action within thirty (30) days after the Investment Partnership makes demand on the Partnership to do so." (Emphasis supplied.) Therefore, the Investment Partnership is only entitled to bring an action to enforce the General Partners' obligations under the guaranty, if it makes a demand upon the Partnership to enforce those obligations and the Partnership fails to do so within 30 days. This requirement is unambiguous, and contrary to the plaintiffs' argument here, this provision does not create an alternative means by which to enforce the guaranty. See, e.g., *Sovereign Healthcare, LLC v. Mariner Health Care Mgmt. Co.*, 329 Ga. App. 782, 786 (1) (b) (766 SE2d 172) (2014) (plain language of limited guaranty must be strictly construed and express terms cannot be extended). Our conclusion is consistent with the provision in each guaranty that "This

9

Guaranty . . . shall inure to the benefit of the *Partnership* and the Investment Partnership." (Emphasis supplied.)

"On a motion for summary judgment the plaintiff, as movant, has the burden of establishing the absence or non-existence of any defense raised by the defendant." (Citations omitted.) *Greenstein v. Bank of the Ozarks*, 326 Ga. App. 648, 649 (1) (757 SE2d 254) (2014). Murphy raised the defense that the plaintiffs cannot enforce the guarantees because a condition precedent was not satisfied, and plaintiffs have not negated this defense. The guaranty cannot be enforced absent evidence of the plaintiffs' compliance with the condition precedent. See OCGA § 13-3-4; *Hall v. Ross*, 273 Ga. App. 811, 813-814 (616 SE2d 145) (2005) (court erred in concluding that party paid amounts due under contract where plain reading of contract contained condition precedent before deducting payment). The trial court therefore erred in granting the plaintiffs' motion for partial summary judgment seeking liability and damages under the guarantees. See *Fayetteville v. Fayette County*, 171 Ga. App. 13, 14 (2) (318 SE2d 757) (1984).

Murphy's remaining arguments here are moot in light of our reversal, and we affirm the denial of his motion for summary judgment. While Murphy has shown that the grant of partial summary judgment was in error on the issue of the condition

precedent of the guarantees, he has not shown that he is entitled to judgment as a matter of law on this issue as the movant on his separate motion for summary judgment.

*Judgment affirmed in part, reversed in part. Doyle, C. J. and Phipps, P. J., concur.*