**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 29 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JB CARTER ENTERPRISES, LLC, DBA ATM Merchant Systems, | No.   20-15271 |
| Plaintiff-Appellant, | D.C. No. 2:18-cv-00394-JAD-NJK |
| v. | |
| ELAVON, INC., | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted March 11, 2021
Las Vegas, Nevada

Before:  NGUYEN and BENNETT, Circuit Judges, and HARPOOL,** District
Judge.

In this diversity action, JB Carter Enterprises, LLC, dba ATM Merchant

Systems ("ATMMS") appeals the district court's order granting summary

judgment to Elavon, Inc. ("Elavon").  We have jurisdiction under 28 U.S.C.

---

        *     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

        **     The Honorable M. Douglas Harpool, United States District Judge for
the Western District of Missouri, sitting by designation.

§ 1291. We affirm on the fraud claim relating to the Equinox L5200 equipment, reverse as to all other claims, and remand.

We review the district court's grant of summary judgment de novo, and we must view "the evidence in the light most favorable to the nonmoving party." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc). Thus, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

1.    The district court granted summary judgment on ATMMS's claims for breach of contract and breach of the implied covenant of good faith and fair dealing because it determined that the alleged oral agreement on which those claims were based was barred by the integration clause in the parties' written agreement ("Master Agreement"). Under Georgia law, contract interpretation is a question of law.[1] *Hall v. Ross*, 616 S.E.2d 145, 147 (Ga. Ct. App. 2005). If the contract language is "clear and unambiguous," "the court simply enforces the contract according to its clear terms." *Id.* (quoting *Woody's Steaks, LLC v. Pastoria*, 584 S.E.2d 41, 43 (Ga. Ct. App. 2003)).

---

[1] Neither party challenges the district court's holding that Georgia law governs the Master Agreement.

2

The integration clause states that the Master Agreement represents the entire agreement between ATMMS and Elavon "with respect to the matters contained [in the Master Agreement]," and that the Master Agreement may be amended only in a writing signed by the parties. Nothing in the Master Agreement covers the subject matter of the alleged oral agreement—that Elavon would provide ATMMS with EMV (Europay, Mastercard, Visa) technology by October 1, 2015, ("Shift Date"), and that the Equinox L5200 device would be EMV enabled. Though the Master Agreement defines some terms broadly, such as "payment devices" and "merchant services," it does not use those terms in describing Elavon's obligations owed to ATMMS. For example, nowhere in the Master Agreement does it state that Elavon will provide "payment devices" or "merchant services" to ATMMS. Further, although Schedule C was purportedly updated to include the Equinox L5200, the updated schedule presumably, like the original, listed only the price of the device and did not specify its functionality, including whether it would be EMV enabled, or any delivery schedule or terms for ordered equipment. Equipment features or functionality and equipment delivery schedules are outside the terms and scope of the Master Agreement.[2]

Because the terms of the Master Agreement do not encompass the subject

---

[2] It is also illogical that the parties would need to amend the Master Agreement to reflect agreed-upon delivery dates or features for ordered equipment.

3

matter of the alleged oral agreement, the integration clause does not bar ATMMS's contract-based claims. Thus, the district court erred in granting summary judgment on the contract-based claims.

We are unpersuaded by Elavon's alternative argument that the contract-based claims fail because ATMMS presents no evidence of consideration supporting the alleged oral agreement. "Consideration is the exchange of a promise or performance, bargained for by the parties." *Jones v. SunTrust Mortg., Inc.*, 274 P.3d 762, 764 (Nev. 2012).[3] ATMMS has sufficiently identified consideration—ATMMS bought 197 Equinox L5200s and agreed to keep Elavon as its processor, and in exchange, Elavon promised that it would provide ATMMS with EMV by the Shift Date and that the Equinox L5200s would be EMV enabled.

2.      ATMMS alleges that Elavon provided ATMMS with various false dates by which ATMMS could process EMV personal identification number (PIN) debit transactions using Elavon's processing platform ("EMV Fraud Claim"), and that Elavon falsely represented that the Equinox L5200 device would be the EMV PIN pad device that would work with Elavon's processing platform ("Equipment Fraud Claim"). The district court granted summary judgment on the EMV Fraud Claim because ATMMS presented no evidence that Elavon knowingly

---

[3] Elavon concedes that it is immaterial whether we apply Georgia or Nevada law in analyzing whether ATMMS has sufficiently identified consideration.

communicated false target dates to ATMMS. We disagree.

ATMMS's general manager, Michael Poggi, testified that Elavon employees told him that ATMMS "would have EMV" before the Shift Date. But Eric Przybylek, an Elavon employee, testified that Elavon never intended to provide the capability to process EMV PIN debit transactions using Elavon's processing platform by the Shift Date. Viewing this evidence in ATMMS's favor, a factfinder could reasonably infer that the statements made to Poggi were knowingly false. A factfinder could also reasonably infer from other evidence that Elavon knew at least some target dates provided to ATMMS after the Shift Date were false. Elavon provided target dates for EMV PIN debit in 2016, yet three years later, Elavon was still working on EMV PIN debit. A target date of months (or even a year) versus three years is very different. The disparities between Elavon's target dates suggest that Elavon may have known that its target dates in 2016 were false, or, at the very least, that Elavon had an insufficient basis for making the representations. *See Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992) (per curiam) (setting forth the elements of a fraud claim, which include "[d]efendant's knowledge or belief that the representation is false (*or insufficient basis for making the representation*)" (emphasis added)). Elavon also chose to prioritize its Canada project over EMV PIN debit, and the Canada project took two years to complete. Construing this evidence in ATMMS's favor, Elavon

presumably knew that it would not complete EMV PIN debit so long as the Canada project was ongoing, and thus any EMV PIN debit target dates preceding the completion of the Canada project may have been knowingly false.

Because there is evidence supporting an inference that Elavon knowingly communicated false target dates to ATMMS, the district court erred in granting summary judgment on the EMV Fraud Claim.

As to the Equipment Fraud Claim, "[w]e may affirm the grant of summary judgment on any basis supported by the record," *Newton v. Diamond*, 388 F.3d 1189, 1192 (9th Cir. 2004), and the parties have fully briefed the issue. We affirm the district court's grant of summary judgment to Elavon on the Equipment Fraud Claim because ATMMS presents no evidence that Elavon knowingly made false representations about the Equinox L5200. ATMMS bought the devices based on representations made in 2013. ATMMS points to no evidence showing that Elavon knew that its representations about the Equinox L5200 were false when made in 2013.[4]

_____

[4] During oral argument, ATMMS's counsel pointed to Lisa Carmichael's deposition testimony. Oral Arg. at 3:40–4:52, https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000019011. Her testimony, however, does not support that Elavon knew its representations about the Equinox L5200 were false when made in 2013. First, her testimony is ambiguous as to whether she was referring to Elavon's decisions about the Equinox L5200 or providing amnesty. Second, even assuming her testimony was about the Equinox L5200, it shows only that Elavon decided sometime in 2015 to push back supporting the Equinox L5200 until 2016.

3. The district court held that the economic loss doctrine barred ATMMS's negligent misrepresentation claim because, although ATMMS alleged noneconomic damages to its business reputation, it offered no evidence supporting that allegation. The record, however, contains evidence showing that ATMMS lost existing and new business because it did not have EMV PIN debit by the Shift Date. Construing this evidence in ATMMS's favor, a factfinder could reasonably infer that ATMMS suffered some amount of reputational harm to its business. Thus, the district court erred in granting summary judgment on the negligent misrepresentation claim.[5]

4. The district court granted summary judgment on the claims for wrongful interference with contractual and prospective business relations because it determined that ATMMS presented no evidence that Elavon specifically intended to disrupt or harm ATMMS's existing or prospective business relations. Under Nevada law, intent is a necessary element of both torts. *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003) (per curiam); *Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours of S. Nev.*, 792 P.2d 386, 388 (Nev. 1990) (per curiam). The Nevada Supreme Court has adopted the definition of intent in the Restatement (Second) of Torts: the "interference with the other's prospective

---

[5] We reject ATMMS's other arguments challenging the district court's application of the economic loss doctrine.

contractual relation is intentional if the actor desires to bring it about *or if he knows that the interference is certain or substantially certain to occur as a result of his action*." *Gray Line Tours*, 792 P.2d at 388 (emphasis added) (quoting Restatement (Second) of Torts § 766B cmt. d (Am. L. Inst. 1979)).

Construing the evidence in the light most favorable to ATMMS, the evidence shows that Elavon knew with substantial certainty that delaying EMV PIN debit would interfere with ATMMS's existing and prospective business relationships. Thus, the district court erred in granting summary judgment on the tortious interference claims.[6]

Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[6] We decline to consider Elavon's argument that ATMMS presented no evidence that it had a prospective business relationship with any third party, so as to allow the district court to address it in the first instance on remand.